# CHARLESTON.

FOREST COAL Co. *et als.* v. DOOLITTLE *et als.*

Submitted April 23, 1903. Decided November 28, 1903.

1. PROHIBITION—*Judge.*

The writ of prohibition lies to restrain a judge from proceeding in a cause in which he is disqualified by reason of interest in the subject matter thereof, although the court over which he presides has jurisdiction of the cause. (p. 212).

2. PROHIBITION—*Error—Judge.*

Where a judge of an inferior court who is disqualified by reason of interest, is permitted to proceed to final judgment or de-

cree, his interest is ground of error for which reversal may be had in the appellate court, and renders the judgment or decree voidable; but he may be restrained, before judgment or final decree, at any stage of the case, by the writ of prohibition, and his disqualification may be made to appear upon the motion for the writ, without its having been first pleaded in the court below, passed upon adversely there and then established in the superior court on appeal or writ of error.  (p. 213).

3.  JUDGE.

In order to disqualify, the interest of the judge must be in the subject matter of the cause, and not merely in a legal question involved in it. (p. 214).

4.  JUDGE—*Error*.

In determining whether such disqualification exists, the superior court will ascertain what rights and interests are involved in the case and may be subjects of adjudication therein, and, if it be found that the judge has such interest as renders it impossible for him to adjudicate upon all the rights involved, without affecting his own, the writ will be awarded, without inquiry as to whether the parties will, or will not, call for an adjudication upon the particular matter as to which the disqualification exists. (p. 216).

5.  JUDGE—*Error*.

An order dismissing the cause or part of a cause, in which a judge is so interested as to disqualify him in respect thereto, entered or allowed by him, on motion of the parties by counsel, without special authority given to said counsel for that purpose, is voidable, and the party having the right to prosecute the cause so dismissed, in whole or in part, is entitled to an adjudication, in the same cause, by a qualified judge, upon the question of his right to have the cause, or so much thereof as has been so dismissed, re-instated under section 11 of chapter 127 of the Code of 1899. (p. 225).

6.  ATTORNEY.

The general authority of an attorney does not include power to voluntarily enter, or cause to be entered, an order that perpetually bars the right of his client, such as *retraxit*. Such act can be done only by the party in person, or by his attorney in pursuance of special authority conferred upon him for the purpose.  (p. 227)..

7.  JUDGE—*Error*.

The judge of a court obtains a disqualifying interest by taking a lease, together with other persons, upon part of a tract of land against which a suit, instituted by the state, for the sale thereof as school land, and petitions filed by a claimant of the

title of the land, for the redemption thereof, are pending, and his disqualification is not removed, by the dismissal, as to the part on which the lease is, of the bill and amended bills, upon the motion of counsel for the state, founded solely upon his admission that such part of the tract is not subject to sale, and the dismissal of the claimant's petition and amended petition, upon his motion by counsel, founded upon a written renunciation and disclaimer, signed by his counsel. (p. 228).

Appeal from Circuit Court, Cabell County.

Writ of prohibition applied for by the Forrest Coal Company against E. S. DOOLITTLE, JUDGE, *et al.*

*Writ Awarded.*

CAMPBELL, HOLT & DUNCAN; BROWN, JACKSON & KNIGHT; LYON; SHEPPARD & GOODYKOONTZ; HUBBARD & HUBBARD and against E. S. Doolittle, Judge *et al.*

M. S. STILES and MOLLOHAN, McCLINTIC & MATTHEWS, for respondents.

POFFENBARGER, JUDGE:

A writ of prohibition has been applied for by The Forest Coal Company and others, to prevent the Honorable Edward S. Doolittle, judge of the circuit court of Cabell County, from sitting further in a chancery cause, pending in said court, on the ground that he is disqualified as to that case, by reason of his interest in the subject matter thereof. This raises two questions, the first of which is, whether, if such disqualification exists, the writ lies, and the other, whether the judge has any disqualifying interest.

The authorities almost uniformly hold that when a judge of an inferior court is recused before judgment in a case in which he has an interest, such as disqualifies him, and a prohibition is applied for to restrain him from further sitting in the cause, it will be granted, if, upon the application therefor, it appears that he is disqualified. "Prohibition is the proper remedy to prevent action by a judge who is disqualified by interest, or otherwise." Works on Courts and their Jurisdiction, 638. "A writ of prohibition will lie to restrain a judge from proceeding in an action in which he is disqualified by reason of interest, although the court over which he presides may have jurisdiction

of the cause." 23 Am. & Eng. Enc. Law, 2 Ed. 223. The following cases, fully supporting the text, are cited: *Gravel Mining Co.* v. *Keyser,* 58 Cal. 315; *Gold Mining Co.* v. *Keyser,* 58 Cal. 328; *Milton Mining Co.* v. *Keyser,* 58 Cal. 328; *South Feather Co.* v. *Keyser,* 58 Cal. 329; *Blue Tent Co.* v. *Keyser,* 58 Cal. 329; *People* v. *District Court,* 26 Cal. 226; *State* v. *Wear,* 129 Mo. 619; *State* v. *Board of Education,* 19 Wash. 8.

These cases were decided in states in which statutes had been passed prohibiting judges from sitting in causes in which they are interested. Where such statutes exist, judgments rendered by interested judges are generally held to be void. Where the disqualification is not statutory, but rests upon the common law, such judgments are voidable only. *Findley* v. *Smith,* 42 W. Va. 299; Black on Judgments, sections 174, 266; Cooley's Cons. Lim. 509; *Claunch* v. *Castleberry,* 23 Ala. 85; *Heydenfeldt* v. *Town,* 27 Ala. 423; *Dimes* v. *Canal Co.* 3 H. L. 759.

It was strongly insisted for the respondents, upon the argument, that, as in this state, there is no statute prohibiting a judge from sitting in a case in which he is interested, and a judgment rendered in such case is voidable only, there is no want of jurisdiction, in consequence of which prohibition does not lie. There is jurisdiction in the court. The want of power is in the judge only. It is personal to him. His interest is a collateral matter which arises in the cause over which the court has full jurisdiction, and renders the judge powerless to further act. This argument is answered by the judges of the English Courts in their reply to questions propounded by the House of Lords in *Dimes* v. *Canal Co.,* 3 H. L. 759, 784, in which they said a judgment or decree rendered by an interested judge or chancellor was voidable only, for reasons of public policy, but that the writ of prohibition did lie nevertheless to the judge of an inferior court to prevent him from sitting in the case. As to the character of the judgment and reason for holding it not void, they said: "It would create great confusion and inconvenience if it was. The objection might be one of which the parties acting under these orders might be totally ignorant till the moment of the trial of an action of trespass for the act done."

As to the use of the writ of prohibition in such cases, they said: "If this had been a proceeding in an inferior court, one

to which a prohibition might go from a court in Westminster Hall, such a prohibition would be granted, pending the proceedings, upon an allegation that the presiding judge of the court was interested in the suit. \* \* \* If no prohibition should be applied for, \* \* \* the proper mode of taking the objection to the interest of the judge would be, in Courts of Common Law, by bringing a writ of error, for error in fact, and assigning that interest as cause of error."

"The former course was stated to be proper in the case of *Brookes* v. *Earl of Rivers,* it being suggested that the Earl of Derby, who was Chamberlain of Chester, had an interest in the suit; and the court held that, where the judge had an interest, neither he nor his deputy can determine a cause or sit in court; and if he does, a prohibition lies."

"A suit was surmised to be before the Lord President of the Marches, for an office, between the grantee of the Lord President and a stranger, wherein the only question would be, Whether the grant of that office belonged to the Lord President? and because in this case he would be as it were both judge and party, a prohibition was granted." 8 Bac. Abr. 231.

To the authorities just cited, it might be objected that the expressions of opinion as to the applicability of the writ of prohibition in such case, are *obiter dicta,* for the reason that in the case quoted from, it was concededly not applicable, because the decisions then under consideration had been made by the Lord Chancellor and the Vice Chancellor, against whom the writ cannot go because the court over which they preside is of equal dignity with the superior courts of law. In *Brookes* v. *Earl of Rivers,* Hardress, 503, the writ was refused because it was found that the Earl of Derby was not disqualified, and it was not absolutely necessary to say the writ would have been awarded had it been otherwise. However, these opinions were delivered by judges of the highest courts of that country from which we have inherited the common law and they may well be supposed to have been thoroughly familiar with its principles and the practice under it. A quotation from Bacon's Abridgment has been given, in which a precedent is cited.

In *Gold Mining Co.* v. *Keyser,* 58 Cal. 315, 326, . Sharpstein, judge, does not base authority to grant the writ upon the character of the judgment. He said: "And it may be, al-

though the decisions are conflicting upon the question, that the judgment, if one should be entered in the action, would not be void by reason of the disqualification of the judge to sit in it. All agree that it would be voidable at least. But if the judge is interested in the action he has no right to sit or act in it. * * * His sitting or acting in an action in which the law declares he shall not sit or act, would seem to be without jurisdiction. * * * Now a judge who is interested in an action, not only has no authority to hear and determine it, but he is expressly prohibited from doing so. * * * The bare fact of a judge sitting in an action in which he is interested is sufficient ground for the reversal of any judgment or order that he may make in that cause. That would seem to indicate that a judge so interested would act without or in excess of his jurisdiction."

That it is an act in excess of jurisdiction clearly appears if we suppose a case in which a judge has rendered judgment in a case in which he was interested, and his decision is in absolute conformity with the law, and, if rendered by a disinterested judge, could not possibly be reversed. Yet, because of the interest of the judge who rendered it, that judgment would have to be reversed. For what would it be reversed? Not because it is not such a judgment as the law pronounces upon the case made by the pleadings in the evidence, but simply because the judge was interested. Is it not perfectly clear that the only reason for reversing in such a case, is want of power in the judge to act? Want of judicial power is want of jurisdiction.

There is no reason for any distinction between the cases in which a statute declares that an interested judge shall not sit, and those in which he is inhibited by the common law from sitting. A statute is of no higher dignity, nor any more efficacious, than the common law, and no statute has more emphatically and unequivocally negatived the power of a judge to sit in his own cause than does the maximum of common law *"Nemo debet esse judex in propria causa."* Such was its force that Lord Coke said even an act of parliament could not vest power in a man to sit as judge in his own cause, "for when an act of parliament is against common right and reason, or repugnant, or impossible to be performed, the common law will control it, and adjudge such an act to be void." *Bonham's Case,* 8 Co. 114,

118. Cooley's Constitutional Limitations, speaking of legislative power to do away with this principle of natural justice, says: "To empower one party to a controversy to decide it for himself is not within the legislative authority, because it is not the establishment of any rule of action or decision, but is a placing of the other party, so far as that controversy is concerned, out of the protection of the law." So reprehensible, in the opinion of the sages of the law, was the act of a judge sitting in his own cause that in early cases attachments went against him and imprisonment was inflicted upon him. Anon. Salk. 396; *Wright* v. *Crump,* Ld. Ryd. 766.

Before entering upon the next inquiry, namely, whether Judge Doolittle has a disqualifying interest in the subject matter of the cause, it is due to him to say that no member of this Court doubts that he sincerely believes himself to be disinterested and qualified to sit in the case. He says in his answer "that he has no interest in the subject matter of said suit or in the success or failure of any contention therein; that while the labor and responsibilities incident to the hearing and determination of the many questions that have arisen, and that will arise therein from time to time, are such as a judge might well wish to be relieved from, they pertain, just as in other cases, to the judicial duties that respondent assumed with his assumption of office, and which he is not permitted to evade, or transfer to another, from personal wish, nor upon the wish of a party, except for legally sufficient cause." It is merely a question of the application of the law on the subject of disqualifying interest to the peculiar and complicated situation of the case, and the conclusion of this Court, whatever it may be, will not carry with it any reflection upon the honor of Judge Doolittle, nor in the slightest degree impugn the motives which have impelled him to decline to absent himself from the bench during the further progress of the case in which it is claimed he has no right to sit. Whether a judge has such an interest as disqualifies him is sometimes a question of much nicety and great intricacy. In some instances they have been compelled to sit where they believed themselves to be disqualified and had refused to act; in others, they have been prohibited from acting in cases in which they believed themselves qualified.

In 1894 the State of West Virginia instituted a suit in chancery in the circuit court of Wyoming County against Henry C. King and others for the purpose of subjecting to sale for the benefit of the school fund so much of a tract of five hundred thousand acres of land, patented in 1795 to Robert Morris, and now claimed by said King, as lies in the State of West Virginia The portion sought to be subjected is supposed to contain about three hundred and twenty-seven thousand acres. In 1896, King appeared in said cause and filed his petition and answer, alleging that he was the owner in fee of the tract, denying that the same or any part thereof had become forfeited for non-entry or non-payment of taxes, and prayed that, in the event it should be held to have been forfeited, he might be permitted to redeem the same. Such further proceedings were had that, on the 30th day of September, 1897, a decree was entered, permitting a redemption, from which an appeal was taken and the decree was reversed and the cause remanded. See *State* v. *King,* 47 W. Va. 437, where much of the history of the case will be found. The decree thus reversed permitted the redemption of ten thousand acres, on the payment of $3,090.08, but the ten thousand acres were not identified nor located by any description. It was supposed to be all the land within the whole tract that was not claimed by any person other than King. It authorized King to select and locate the land thus redeemed at any place or places within the whole survey where he could do so without conflicting with the rights of other claimants.

After the cause was remanded, the state filed a fifth amended bill, making some four hundred claimants under junior patents and otherwise new parties, and the cause was removed to the circuit court of Logan County, and, still later, to the circuit court of Cabell County. After the removal of the cause to Cabell County, King filed an amended petition, particularly describing several portions of the Morris grant upon which he offered to pay the taxes and interest, excluding from said grant some five or six hundred junior patents within its bounds as to which he asked to be relieved from payment of taxes thereon. Thereupon a decree was prepared and entered over the objection of counsel for King, finding and adjudicating "that the State of West Virginia has no title or estate in or to or right to sell said tracts, pieces or parcels of land, or either of them, saving such, if any,

as may have been forfeited by reason of failure to enter the same on the land books, or for non-payment of taxes thereon by the present owners or the former owners thereof, being the grantees above named of the said tracts, pieces or parcels of land, or those claiming under them." Thus a number of tracts claimed by persons as against King went out of the case.

Some of the claimants under junior patents within the Morris grant filed answers, claiming parts of the land and contesting King's right to redeem the same, and there was a reference to a commissioner to report as to the title of the parties, including the new parties, and as to the boundary of the Robert Morris patent, and other matters necessary to a decision of the issues raised.

On the 31st day of March, 1903, the commissioner returned his report to which numerous exceptions to the findings of the commissioner on the question of boundary lines and other matters were taken by the defendants who were contesting the title of King and denying his right to redeem, but the report was not then filed.

At the time this report was returned, the matter of the alleged disqualification of the judge came up, and is grounded upon the following additional facts:

On the 28th day of February, 1903, Judge Doolittle, John Dingess and S. C. Fisher took a coal lease for thirty years on about eight hundred acres of land, admittedly located within the boundaries of the Morris grant as claimed by King in his petition, and known as the Moses Mounts land. In his answer, the judge says the question whether this land was affected by the King claim was raised and he was assured by John B. Wilkinson, who represented Mounts, that King had no claim to it, and that whatever claim he had had to that land, he had conveyed to Harvey, Miller and Nighbert, and that the title of Mounts was perfect by long possession and payment of taxes. It seems to be admitted that, on the 30th day of March, 1903, one of the counsel for parties contesting King's claim privately expressed to the judge his opinion that he was sufficiently interested to disqualify him and requested him not to sit further in the case. On the following day, when the commissioner's report was brought in, the judge stated the facts from the bench, relating to his alleged interest and expressed the opinion that he was not disqualified,

when counsel representing the junior patent claimants insisted that he was disqualified, indicating the reasons therefor, and he announced that he would take the matter under advisement until the following Monday, April 6th, at which time he would announce his conclusion.

On Saturday, April the 4th, on the motion of King by his counsel, and the motion of John S. Marcum, counsel representing the state in said suit, the petition and amended petitions of King and the bill and amended bills of the state were all dismissed as to the lands upon which said lease had been taken, the order of dismissal specifying by bounds a tract of land including all of said Mounts land.

On the 6th day of April, 1903, the commissioner's report and exceptions thereto were filled, and the contesting defendants, as the junior patent claimants are called, tendered and filed a motion in writing, alleging the disqualification of the judge, accompanied by the affidavit of L. B. Baugh, showing that the land upon which the lease had been taken was within the Morris grant as claimed by King, and requesting that the judge vacate the bench and permit the election of a special judge to try the case, or call in for that purpose a regularly elected judge from some other circuit, or remove the cause for trial into the circuit court of some county outside of his circuit. Upon this motion time was allowed until the 11th day of April for counter affidavits to be filed by King. On said last mentioned day the affidavit of M. F. Stiles, counsel for King, was filed in resistance of the motion, stating that the opinion, given by Wilkinson to the judge at the time the lease was taken, was correct, but admitting that at that time, a portion of the Mounts lands was still included in King's amended petition and had not been excluded therefrom, but that King did not claim any portion of it, and had compromised his claim thereto with Harvey, Miller, Altizer and Nighbert and executed to them a deed therefor. This affidavit further showed that, when Harvey and his associates took said deed from King, they expressed a purpose not to set up any claim or title thereunder as against persons other than King nor ask to be permitted to redeem any land under said deed, but that the purpose was merely to strengthen their own title, and that the disclaimer and renunciation filed by King on April 4th, was filed "as an act of simple justice to said judge  *  *  *  *  in order that the

record might conform to, and not belie, the facts." After the filing of this affidavit and argument of counsel, the motion was overruled and the cause was set down for argument upon the exceptions to the report of the commissioner on the 21st day of April, 1903. It is charged in the petition and admitted in the answer, that, when the motion came on to be heard on April 11th, Clement H. Hudson presented a petition on behalf of J. W. Hinchman, commissioner of school lands, praying that the decree of April the 4th, dismissing the bill and amended bills as to the lands therein mentioned, be vacated. This petition was accompanied by a letter from Hinchman to Hudson, authorizing the latter to have said order set aside and the cause re-instated as to said land and proceeded with the final decree. Marcum, who had formerly been employed and authorized to represent the state in the cause, objected to the filing of the petition, which he charged had been procured and prepared by counsel for the contesting defendants, and the judge says in his answer, "and this respondent considering said petition improper and an impertinence, and said Hinchman not being a party to said suit, except in his private character as a defendant named in said fifth amended bill, refused to take any notice of the same by action thereon."

The report of the commissioner on the question of the boundaries of the Morris survey was favorable to King, except that it so restricted the lines as to leave out on one side of the tract, as claimed by King, a considerable section of land, within which the Mounts lands lie. Confirmation of that report would exclude from the King survey the lands upon which the lease was taken. If the exceptions to that report should be sustained and the whole matter of boundaries recommitted to the same or another commissioner, the findings might include the lands upon which the lease was taken. Hence, it is said the judge has a direct interest in land which is involved in the suit. King, however, has not excepted to the report and, so far, claims nothing beyond the line located by the commissioner. At the time the lease was taken parts of these lands were included in the claim of the state. For the respondents it is contended that the disclaimer and dismissal of April 4th, have eliminated the Mounts land from this case, even if it be true that the taking of the lease made the judge an interested party at the time it was taken, and that his dis-

qualification has been removed by the dismissal. In reply to this contention it is urged that the dismissal is not binding upon either the State or King; that, in order to bind, it would have to be equivalent to a *retraxit;* and that a *retraxit* must be made by the parties in person and not by counsel.

In endeavoring to ascertain whether there is a disqualifying interest on the part of the judge, it is necessary to consider the statutory regulations under which said suit is prosecuted, prescribing the duties and powers of the court, and the commissioner of school lands and determining the scope and nature of such suit. The commissioner of school lands is appointed by the circuit court, and he is the agent of the state, empowered to see that every officer having any duty to perform under chapter 105 of the Code performs the same as therein required, and to report any failure of any such officer to the circuit court of his county. . Once in each year he is to report to the circuit court a list of all tracts and parcels of land, reported by the auditor and surveyor as forfeited or waste and unappropriated lands, which report has to be recorded in the chancery order book and preserved, and thereupon a suit or suits in chancery shall be commenced and prosecuted by and in the name of the State of West Virginia for the sale of every such tract and parcel of land so reported, to which the former owner or the person in whose name it is forfeited, shall, if known, be made a defendant, together with all persons claiming title to, or interest in, such lands, and all persons claiming any such interest who are not made parties may come in by petition. If at any time during the pendency of such suit, it shall appear to the court that any part of any tract has been sold by the state in any proceeding for the sale of school lands, and the taxes regularly paid thereon since such sale, or is held by any person under section 3 of article 13 of the Constitution of the State, the bill, as to such part, shall be dismissed and the suit proceeded with to a final decree as to the remainder.

"In every such suit brought under the provisions of this chapter, the court shall have full jurisdiction, power and authority to hear, try and determine all questions of title, possession and boundary which may arise therein; as well as any and all conflicting claims whatever to the real estate in question arising therein; and the court, in its discretion, may at any time, re-

gardless of the evidence, if any, already taken therein, direct an issue to be made up and tried at its bar as to any question, matter or thing arising therein, which, in the opinion of the court, is proper to be tried by a jury. And every such issue shall be proceeded in, and the trial shall be governed by the law and practice applicable to the trial of an issue out of chancery; and the court may grant new trials therein as in other cases tried by a jury." Code, chapter 105, section 18.

The former owner, his heirs, devisees or assigns may at any time during the pendency of the suit file his petition, stating in full his title, accompanied by the evidence thereof, and praying to be allowed to redeem so much of the real estate as to which the title remains in the state, and upon full and satisfactory proof that, at the time the title to said land vested in the state, he had a good and valid title thereto, legal or equitable, superior to that of any other claimant thereof, the court may, by a proper decree, permit the petitioner, upon the payment into court or to the commissioner of school lands, the costs, taxes and interest properly chargeable thereon, to be fixed by the court in its decree, to redeem the real estate mentioned in his petition. But such petitioner shall require no other title to the lands so redeemed than was vested in him immediately before such forfeiture, and such redemption shall in no wise affect or impair any title or interest any other person may have in said real estate or any part thereof, by purchase from the state or under and by virtue of section 3 of article 13 of the Constitution.

"Every final decree entered in any such suit shall be a bar to the claim of every person to the real estate, or any part of it or any lien thereon, or to the proceeds thereof, who has failed to appear and present his claim thereto as is provided in the sixth section of this chapter, except as to the excess of the proceeds of the sale thereof, as provided in section sixteen of this chapter. And except as provided by the last clause of section seventeen of this chapter." Code, chapter 105, section 20.

Obviously, these statutory provisions contemplate a proceeding against the land as to which the bill is filed, adverse to every claimant thereof. Here the King title to so much of the five hundred thousand acre tract as lies in this state is asserted by the State of West Virginia, not only as against King, but as to all other persons claiming either under or against him. The suit

proceeds upon the theory of a forfeiture of the title by whomsoever formerly held, for non-entry of the land for taxation, or non-payment of the taxes thereon, if entered for such purposes. Neither King nor any other person can be permitted to redeem except by pleading sufficiently that he had, at the time of the forfeiture, a title to the land superior to that of any other person, and had adduced full proof of such title. Whoever comes and makes such a showing will be permitted to redeem by payment of all the taxes, interest and costs. If no person can establish such title, then the whole proceeds of the land go into the state treasury. It is immaterial to the state whether King or some other person can make out such title, but if no person can, the state is benefitted. Hence, it has an interest in upholding its claim for taxes and making good the forfeiture against the whole world.

The statute contemplates two classes of persons as to whom there may be a dismissal. They are persons holding the lands by purchase in a former proceeding for the sale of school lands, and persons having title under section 3 of article 13 of the Constitution, but there shall be no dismissal as to them unless it appear to the court that they have such title. When such suit is prosecuted to final decree, the statute expressly declares that the final decree shall be a bar to the claim of every person as to the land or any part of it or the proceeds thereof, except that the former owner, upon proof of title at the time of forfeiture may have the excess of the proceeds after payment of taxes, interests and costs, and that a person having title by purchase in a former proceeding for the sale of school lands and persons having title under section 3 of article 13 of the Constitution shall be protected.

It is clear, therefore, that the lands upon which the lease was taken were originally involved in the suit of the *State* v. *King* and others, and that a portion thereof was not excluded from said suit until after the lease was taken. The dismissal of the bill and amended bills upon the motion of counsel for the state and admission of said counsel this land was not subject to sale, and the dismissal of King's petition and amended petition, upon his motion and renunciation of title, put the leased lands out of this suit. As has been shown, the decree, of April 4th, is not void but voidable. In the matter disposed of by that decree the

judge was undoubtedly and concededly interested. It is said that it was a decree entered by consent of parties and went as a matter of course. This may do as to King, but it does not bind the state. There is no authority for a dismissal as to the state except that given by the statute, and it only authorizes such dismissal when it appears to the court that the land has been sold by the state in another proceeding for the sale of school lands, or is held by some person under section 3 of article 13 of the Constitution. The mere admission of the attorney for the State that such land is not subject to sale, does not amount to proof of the facts upon which a dismissal may be ordered.

As to the motion made by counsel of the State and by counsel for King, it is to be observed that the dismissal based thereon does not bar either King or the State. If it be viewed in the light of the law governing disclaimers, it is not sufficient to bar, for a disclaimer is in the nature of a release and must be the act of the party himself. The authority of the attorney does not extend to the making of releases. 6 Enc. Pl. & Pr. 724; I Dan. Ch. Pr. 708; *Dickerson* v. *Hodges,* 43 N. J. Eq. 47. In order to be binding, it must be either a disclaimer or a *retraxit* and neither can be made by an attorney without special authority therefor. A *retraxit* must be the act of the party himself. 18 Enc. Pl. & Pr. 898. "It is improper to enter a *retraxit* or a judgment in the nature of a *retraxit* and having the effect of a judgment upon the merits without the personal consent of the plaintiff in the action. Such is the rule of the English common law, and, in the absence of statute, such is the rule in this country." *Hallack* v. *Loft,* 19 Col. 74, 81. "In the progress, and until the consummation of the judgment, the attorney has, no doubt, and ought to have, a large and liberal discretion; but he cannot enter a *retraxit,* for that is a perpetual bar, and equivalent to a release. This was the resolution of the court in *Beecher's Case,* (8 Co. 58,) "because," said the court, "it shall be a perpetual bar, and, in a manner, a release, and the admittance of the court cannot prejudice the plaintiff in so high a degree. But in all dilatory matters, the admission of the court may turn the plaintiff, or demandant to delay, but shall never bar the plaintiff, or demandant." Kent, Ch. J., in *Kellogg* v. *Gilbert,* 10 John. Cas. (N. Y.) 218, 221. See also *Lambert* v. *Sanford,* 2 Blackf. (Ind.) 134, 140; *Barnard* v. *Doggelt,* 68 Ind.

305, 511; *Merritt* v. *Campbell,* 47 Cal. 542, 545; *Smith* v. *Lambert,* 7 Grat. 142, approved in *Crotty* v. *Eagle's Admr.,* 35 W. Va. 143, 151; 3 Am. & Eng. Enc. Law, 2 Ed. 370. It does not appear that counsel for King or the State had any special authority to enter a dismissal, and it affirmatively appears that the written disclaimer and renunciation of King was signed by his counsel.

Thus it appears that the utmost that can be conceded as to the order of dismissal of April 4th is, that it is a voidable order. How it may be voided need not be determined here, but it would seem that the statute provides for a re-instatement. Section 11 of chapter 127, Code, says: "Any circuit court may, on motion, reinstate on the trial docket of the court, any case dismissed, * * within three terms after the order of dismissal may have been made." Section 7 of chapter 105, relating to suits for the sale of school lands, says such suits shall be "proceeded in, heard and determined in the same manner, and in all respects as other suits in chancery are brought, prosecuted and proceeded in, and shall be subject to the same rules of chancery practice as other suits in chancery in the State courts of this State, except as herein otherwise provided." In the absence of the statutory provision for the re-instatement of a dismissed case, a new suit would have to be instituted, and this statute is therefore an innovation upon the common law, and might be said to fall under the rule requiring a strict construction in such cases. But it is a remedial statute and clearly falls under the rule requiring a liberal construction. And it is by no means clear that a strict construction would result in the non-application of the statute to this case. It says any case dismissed may be re-instated. Here, the whole case has not been dismissed; only part of it has been dismissed. But as the statute authorizes a re-instatement where the whole case has been dismissed, shall it not be said, with great reason, that the whole includes each part, the greater, the lesser, and that the part dismissed may be re-instated? Moreover, it is the dismissal of the whole case as to a part of the tract included in the bill, and the statute authorizes, upon a proper showing, a severance of the tract and dismissal as to part of it.

At least, it must be said that there is color of right to reinstatement, such as calls upon the court for a decision upon the question, if such re-instatement shall be demanded by the State

or any other interested party. In reply to this, it may be asked what right the court has to assume that anybody will demand a reinstatement, or that any party will not ask it? But that is an insufficient response. No such assumption is required or proper in pursuing the question whether the judge is interested. If it be held that he is qualified to sit in the cause, he must be held competent to sit in it for all purposes, with power to pass upon all rights involved. If any person has the right to call upon the court in the case of *State* v. *King,* for an adjudication as to whether or not a re-instatement can or should be allowed, and the judge sitting in that cause cannot pass upon the question without passing upon a matter in which he is directly interested, then he is clearly disqualified by reason of his interest. The inquiry is not as to what the parties will, or will not do, but as to what rights they have in the case. There is, at least, color of right to re-instatement, if not a clear right to it.

Nor can there be any doubt that, in passing upon a motion for re-instatement as to the Mounts land, the judge would have an interest involved sufficient to disqualify him, although not a party to the suit. The statute expressly provides that a final decree in such suit shall be a bar to the claim of every person to the real estate, or any part of it, or lien thereon, or to the proceeds thereof, who has failed to appear and present his claim thereto, except as to the excess of the proceeds of the sale thereof, and as to persons holding under a former sale or under section 3 of article 13 of the Constitution. Should the case be re-instated as to the Mounts land upon which the judge holds, with others, a lease and a final decree of sale, his title would be absolutely gone. Should he rule against re-instatement and correction of the dismissal order, he would thereby render a decision in support of his own lease. Thus, even if it were necessary that the interest be such as would be affected by the decree to the extent of absolute conclusion of right, he appears to be a person interested in the subject matter of the suit.

As must be apparent, this conclusion results from a consideration and analysis of the statutory provisions relating to suits for the sale of school lands and the statute concerning the re-instatement of dismissal cases. There are no precedents. It is a case of first impression on the question of disqualifying interest.

That interest appears to be of the most direct and substantial character. To make it otherwise, it would be necessary to assume that no motion for a re-instatement will, or can, be made, and that the act of the commissioner of schools lands in employing counsel and moving the vacation of the order of dismissal of April 4th, is not *bona fide,* but captious and impertinent. This the court cannot do. It can only ascertain what rights and interests are involved in the case, and then whether the judge is competent to pass upon, not some only, but all, of those rights and interests, and it clearly appears that he is not.

The interest here, upon the view taken of the statutes, is far greater and more direct, than was the interest of Judge Bennett, which disqualified him in the case of *Findley* v. *Smith,* 42 W. Va. 299. There, a small judgment, which he had assigned, unconditionally and without recourse, was asserted as, and adjudicated to be, a lien upon real estate. He was not a party to the record nor a necessary party to the suit, but the court held that an adjudication that the judgment was unpaid, was a decree in his favor, because, although without recourse, his assignment of the judgment was a warranty that it was what it purported to be, that he had done, and would do, nothing to prevent its collection, and that it had not been paid. There was no intimation or suggestion that there had been any breach of that warranty, and yet this Court, not doubting in the least the absolute integrity of the judge and his absolute freedom from any possible wrong or impure intention, felt itself bound to reverse that decree because of this insignificant interest, which the judge had no doubt inadvertently overlooked.

This jealousy of the law is founded upon the following considerations, stated by Hurlbut, Judge, in *Oakley* v. *Aspinwall,* 3 Com. (N. Y.) 547, 552, as follows: "It is the design of the law to maintain the purity and impartiality of the courts, and to insure for their decisions the respect and confidence of the community. Their judgments become precedents which control the determination of subsequent cases; and it is important, in that respect, that their decisions should be free from all bias. After securing wisdom and impartiality in their judgments, *it is of great importance that the courts should be free from reproach or the suspicion of unfairness.* The party may be interested only that his particular suit should be justly determined; *but the*

*state, the community is concerned not only for that, but that the judiciary shall enjoy an elevated rank in the estimation of mankind.*" In that case, a judge of an appellate court on the bench of which sat seven other judges, four of whom concurred with him, had acted in the case at the request of counsel on both sides, made immediately after he had announced his disqualification and started to retire from the bench, and yet the judgment was reversed because of his disqualification. In this case, as in that, this Court looks no further than to the question of disqualification.

It was suggested, in the argument, that the writ cannot go until after this Court shall have decided on appeal that the interest is such as disqualifies, for the trial judge has jurisdiction and must be allowed to pass upon collateral matters arising in the case, and his disqualification cannot be settled beyond question, except by the decision of this Court. In *Mayor of London* v. *Cox,* L. R. 2 H. L. 259, 283, the answer to this objection is found in the following language: "Indeed, it seems not too much to assert that the question,—at what time a prohibition ought to issue,—is one of practice only, and that there is not necessarily any difference in the form of the writ of prohibition itself, or the declaration thereupon, between the case of want of jurisdiction apparent upon the proceedings in the court below and want of jurisdiction made known to the court above by surmise of collateral matter. The declaration in this case, for instance, which appears to be concisely and well drawn, is equally applicable to either alternative; and it is only upon the record that any question can arise in this house. Nothing but prolixity of pleading could ever have raised such a question upon the record, or otherwise than in the first instance upon the motion. No one can read the writs of prohibition already referred to, and the form of the record in *Bracton,* and the writs in the register *ubi supra* (which furnish good evidence of the law, more especially in the case of so ancient a writ as prohibition), without perceiving that no distinction is made between the two cases, and that in each the question to be tried upon the record is that of jurisdiction only. All the rest is but interlocutory on motion to satisfy the Court that there is occasion for the prohibition, or for allowing the question of competency to be tried. If the application be resisted as unnecessary, or vexatious, or premature,

the practice which has prevailed of deciding such matters at once upon the motion seems unquestionably the more convenient one. No case has been cited or found in which it was raised or decided upon the record. And there is abundant authority to show that even upon motion it is not an objection that ought to prevail, and *that the party proceeded against in the inferior court may, at his option, either plead there or apply for a prohibition."* In this opinion, several instances are cited in which the writ of prohibition was awarded upon the application of parties who had never appeared to the actions in the courts of the judges against whom the writs were issued. The want of jurisdiction was shown upon the application for the writ of prohibition and not otherwise.

The language, "And it is only upon the record that any question can arise in this House," found in the above quotation, relates to the character of the tribunal in which the case was pending, it having no original, but only appellate, jurisdiction in cases of prohibition. It was the house of Lords, deliberating upon a proceeding in error against a decision of the Exechequer of Chamber, which had affirmed a previous decision of the Court of Exchequer, in which the record had been made up. The inconvenience of making the record, in the court against whose judge the writ is applied for, show the want of jurisdiction, is adverted to in this language: "Nothing but prolixity of pleading could ever have raised such a question upon the record, or, *otherwise than in the first instance upon the motion."*

Our statute is a copy of the Act of 1 Will. 4, c. 21, and, in the same case, it is said that the only effect of that statute is to do away with the awarding of the writ upon what was called mere suggestion without affidavit, and to substitute therefor an affidavit.; and to do away with the common law requirement that a declaration in prohibition should be upon behalf of the party and also of the Crown. A reference to our statute will show that this is true.

It is further urged that disqualification may be relied upon as error in the final decree to be made, and corrected on appeal. The anomalous character of such a proceeding has already been indicated. To what has been said it may be added that it would be worse than absurd to put parties to the labor and expense of proceeding to a final decree before an interested judge, only to

find, in the end, that, although just such a decree as the law pro-
nounces, it must be reversed because the judge had no power to
enter it.  If the awarding of the writ were purely discretionery,
these considerations would abundantly justify it in such cases as
this.  But it is not, and never was, a purely discretionery writ.
"The writ of prohibition at suit of a party is not,  as  it  was
thought to be by some eminent judges at the close of  the seven-
teenth century (see per Holt, C. J., *Clay* v. *Snelgrove*, and the
decision of the same judge in *Wharton* v. *Pits*, overruled in *Velt-
hasen* v. *Ormsby*, in the discretion of the court.  This erroneous
opinion may in part account for the fact that the cases reported
to have occurred in the seventeenth century and the early part
of the eighteenth, under the head of prohibition, are not to be
reconciled with one another, or with earlier and later authori-
ties.  The law upon this question of discretion is thus stated in
the judgment of the Queen's Bench in *Burder* v. *Veley*: "If
called upon we are bound to issue our writ of  prohibition  as
soon as we are duly informed that any court of inferior jurisdic-
tion has committed such a fault as to found our authority to
prohibit, though there may be a possibility of correcting it by
appeal.  *   *   *   *   The writ, however, although it may be
of right, in the sense that upon an application being made in
proper time, upon sufficient materials, by a party who has not by
misconduct or laches lost his right, its grant or refusal is  not
in the mere discretion of the court, is not a writ of course, like a
writ of summons in an ordinary action, but is the subject of a
special application to the court upon affidavit, which application,
and the proceedings thereupon, are now regulated by the Act of
1 Will. 4, c. 21" *Mayor of London* v. *Cox*, L. R. 2 H, L. 239,
278, 279.  There is no pretense of laches in this case, because,
as has been shown, the petitioners have not submitted to the
jurisdiction of the judge since his interest attached.  On the
contrary, they have resisted it in the court below without avail
and at last resorted to this Court for the writ.  Moreover, author-
ities hold that the parties cannot waive the disability of the
judge.

Though Judge Doolittle cannot further act in the cause as to
its merits, he may call in the judge of another circuit to hear it,
Code, chapter 112, section 3, or direct the election of a special
judge, Code, chapter 112, section 11, and he may possibly enter an

order, removing the cause to another county, Code, chapter 128, section 1. In the absence of any statute, an interested judge may act so far as is necessary to prevent a failure of justice. When he has sole jurisdiction and the law provides no way by which any other judge may try the case, he may try it. His authority is then grounded upon necessity. *In re. Ryers* 72 N. Y. 1; *Great Charte* v. *Kennington,* 2 Str. 1173; *Mayor of London* v. *Markwick,* 11 Mod. 164; *Dimes* v. *Gr. Junc. Can. Co.,* 3 H. L. Cas. 759; *Findley* v. *Smith,* 42 W. Va. 299.

For the foregoing reasons, the writ of prohibition is awarded as prayed for.

**Writ Awarded.**