# Richmond

HENRY FARRAR TAYLOR v. MARY LOUISE TAYLOR.

April 22, 1946.

Record No. 3046.

Present, All the Justices.

The opinion states the case.

*Gordon & Gordon,* for the appellant.

*Thomas I. Talley,* for the appellee.

HOLT, J., delivered the opinion of the court.

Under review is a suit for divorce, alimony and the custody of a child.

On April 24, 1942, plaintiff instituted divorce proceedings against the defendant on the ground of desertion. On May 19, 1942, the defendant, by leave of court, filed her answer and cross-bill in which she alleged that she had been deserted and abandoned by plaintiff. On September 21, 1942, the Judge of the lower court addressed a letter to the plaintiff and defendant stating that he had twice read the record in the above case and considered briefs filed by both counsel and was of the opinion that neither side had pre-

vailed and that no decree awarding a divorce would be entered in favor of either.

He further said:

"I think that until the child, who is now approximately three years of age, begins to attend school that the custody should be awarded jointly to the parents, and would suggest that arrangements be made to have the child be with the mother one week and with the father the succeeding week, continuing that order until the further order of the court."

On November 16, 1942, the husband was ordered by decree to pay to the wife $12.50 a week for the support of the child and to pay her counsel $150.00, counsel fees.

By decree of date January 13, 1943, a decree was entered dismissing the plaintiff's bill, but the court further held that the plaintiff had wilfully deserted his wife. She, on her cross-bill, was granted a divorce from bed and board, and the allowance of $12.50 for support of the child was continued. The father, however, was given the right to see his child at reasonable times, and the cause was retained upon the docket for such further proceedings as might be necessary.

On May 19, 1943, the plaintiff filed his amended bill, charging his wife with adultery. By decree of date May 21, 1943, this charge of adultery was sustained, and the parties were divorced from the bonds of matrimony. The plaintiff was further ordered to pay to the defendant's counsel the sum of $100.00. The custody of the child was awarded to each of the parents for six months of each year. The father was further ordered to pay to the mother $50.00 a month during the time that the child was with her. Each was given the right to see the child at reasonable times when in the custody of the other.

Leave was further granted to the parties, or to either of them, to again apply to the court for such further orders as may affect the care and welfare of said minor child, Henry Farrar Taylor, Junior. Nothing further remaining to be done, this cause was ordered to be stricken from the docket and the clerk was directed to file and seal the papers.

On July 31, 1944, after notice to the mother, the court by decree ordered that the care of the child should be vested in the mother from June 15th of each year until September 1st, following, during which time the father should pay to her the sum of $30.00 a month for its care. From September until June 15th of each year, the child was to remain with the father at his home in Richmond.

Afterwards the defendant moved to Danville. In conformity with a letter from the judge dated August 7, 1944, sent to Mrs. Taylor, plaintiff went there for the purpose of bringing this child back to Richmond that its tonsils might be removed before the coming school session. The mother refused to comply with these orders in this letter from the judge until advised by her counsel.

On December 22, 1944, the parties, by counsel, appeared before the court. The mother asked that the custody of the child be placed with her, and the father was ordered to forthwith turn over the child to the mother, who was authorized to hold it until December 31, 1944, at 8 p. m., at which time she was to return the child to the home of the father in Richmond. The plaintiff objected and said that the court had no jurisdiction to amend the final decree of July 31, 1944, in the absence of pleadings or evidence showing changed conditions.

On May 25, 1945, the plaintiff, after notice to the defendant, served upon her in Washington, moved the court "to reinstate this cause on the docket, and for leave to file his petition herein asking for the sole custody of his son, Henry Farrar Taylor, Jr., for the reasons set forth in said petition; and came also the defendant, by counsel, and objected to the reinstating of this cause and to the filing of said petition on the ground that said petition calls for a review by the court of the same evidence and facts which have been passed upon and decided previously by the court, or which could have been presented to the court at former hearings; and on the further grounds that there are no facts alleged in said petition to justify the transfer of this cause to another court; and said motion was argued by counsel.

"Upon consideration whereof the court doth refuse to reinstate this cause and doth refuse to allow petitioner to file his said petition, and it is so adjudged, ordered and decreed, to which action of the court the plaintiff, by counsel, excepted, but said petition is hereby made a part of the record in this cause and is marked for identification 'Refused, Julien Gunn, Judge, May 25, 1945.'"

This petition was then tendered and rejected, the court being of opinion that it but threshed over old straw. It is verified and covers over eight pages of printed matter. Among other things, it charges that the mother had left Virginia and was living in Washington—beyond the jurisdiction of Virginia courts; that the mother, when in Virginia, lived with her mother and sister, who are themselves undesirable associates; that the mother is still of immoral habits and given to drunkenness and that the physical condition of the child, when in her care, is deplorable.

In dealing with the custody of this infant, present conditions are our major concern; that is to say, the conditions which obtained when the petition was tendered.

To sustain these charges alone, even without more, the father had a right to be heard, from which it follows that the court was in error in refusing to reinstate this cause upon its docket and in refusing to permit this petition to be filed. Independent of anything which has been done, it is to be remembered that the present welfare of the child is of paramount consideration.

On June 18, 1945, the plaintiff appeared by counsel and the defendant by counsel and in person. She stated to the court that she intended to take the child to Washington where she then lived. The plaintiff moved that he be awarded its sole custody, subject to reasonable visits by the defendant. Plaintiff asked that the court direct the defendant not to remove this child beyond the jurisdiction of the court. That motion was overruled. Plaintiff asked that the defendant be required to give bond, which request the court declined.

██ Even under the most liberal construction of the provisions of Code, section 5111, this cause, which had theretofore been stricken from the docket, should have been reinstated before the decree of May 21, 1943, was in any wise modified.

 Appellee moves that this cause be dismissed. It is said that a part of the testimony was taken *ore tenus* and is not in the record. That motion is without merit. None of the testimony so taken can have any bearing upon the decrees of May 25, 1945, and June 18, 1945, which are the decrees from which appeal is taken. It is said that the presiding chancellor is disqualified, in that he is biased or prejudiced. That assignment is not sustained by the record.

We have no statutes governing bias or prejudice. This is the view taken by Mr. S. S. P. Patteson in an article which appears in 8 Va. Law Reg. (NS) 801, where he said that such a disqualification appears neither in Code, section 6175, nor in section 6176. In the course of his discussion, he said:

"This question was directly decided in the year 1837 in the case of *Boswell* v. *Flockheart*, 8 Leigh (35 Va.) 364, 366. Boswell was the defendant in a suit in Petersburg and he moved for a change of venue on two grounds: one that the general prejudice existing against him in the town of Petersburg was so great that he could not get a fair trial,—which motion the court rejected because Boswell's application was not supported by the affidavits of 'disinterested individuals'— and the other motion supported by affidavit that the judge's brother was interested, and the judge himself was prejudiced against him, was overruled."

Code, section 6175, deals primarily with the transfer of causes from one court to another, where a change of venue is made necessary by local prejudice. Code, section 6176, provides that a judge may disqualify himself when "it is improper in his opinion for him to decide such case or preside at the trial thereof," and under it he may transfer such cause to another court.

Usually there are statutes which govern this procedure.

The subject is elaborately considered in these cases: *Moses* v. *Julian*, 45 N. H. 52, 84 Am. Dec. 114 and Freeman's note; *Craven* v. *United States*, 22 F. (2d) 605, and *State* v. *Atkinson*, 116 Fla. 366, 156 So. 726, 96 A. L. R. 539 and note. In a note to this case, *Boswell* v. *Flockheart, supra*, is cited. In that case, the court, speaking through Tucker, P., said:

"There is not, that I am aware, any such thing known, as a demand, at common law, that a judge shall remove a cause from his own forum because he is prejudiced against one of the parties * * *

" * * * when a judge is interested in a cause, 'or related to either of the parties, or in any manner situated so as to render it improper *in his judgment* to preside at the trial, *it shall be lawful* for such judge to cause the same to be removed to the next circuit, and to the most convenient court in that circuit for trial.' 1 Rev. Code, ch. 69, sec. 54, p. 239. Here the power is given, but its exercise is left to the discretion of the judge. It is not for this court to sit in judgment upon the matter in which he does exercise the discretion, for it is to depend *upon his judgment*; and moreover, from the very nature of the act, the propriety of that judgment depends upon his self-consciousness, into which we cannot dive."

Mr. Patteson's article was written a year after *Ewing* v. *Haas*, 132 Va. 215, 111 S. E. 255, but makes no reference to it. There a writ of prohibition was sought for this reason:

"Affiant believes, by reason thereof, (the presiding judge) is not now in the unbiased position which under the law, a judge should occupy in presiding at the trial of this case."

It did say, however, that in a proper case a writ of prohibition would issue to restrain a judge from presiding in an action in which he is disqualified. That opinion, which is a *per curiam* one, cites a wealth of authorities. There the rule is thus stated:

"In order to disqualify, the interest of the judge must be in the subject matter of the case, and not merely in the legal question involved in it."

To the same effect is *Forest Coal Co. v. Doolittle*, 54 W. Va. 210, 46 S. E. 238. In that case the court, quoting from 23 Am. & Eng. Enc. Law (2d Ed.) 223, said:

"A writ of prohibition will lie to restrain a·judge from proceeding in an action in which he is disqualified by reason of interest, although the court over which he presides may have jurisdiction of the cause."

Preconceived opinion as to the law or a misconception of it is not enough. The judge must be interested, and to that extent, this court can "dive" into the facts.( And by the same token the rule in *Boswell's Case* is modified. The rule in that case is reaffirmed in 30 Am. Jur. 783.

That counsel may sometimes be irritated when the judge does not agree with him is to be expected; and the situation does not change if it afterwards develops that the judge's view of the law is not sustained on appeal.

Judges in the discharge of their judicial functions must not only be pure but above suspicion. Every man is entitled to one fair trial, and plainly he would not get it if the judge were in substance trying his own case.

The rule may be thus stated: Within liberal limits, a judge, in determining his own qualifications, must exercise sound judicial discretion, subject to review. To make him the final judge is to take us back to the days of Baron Jeffreys.

Counsel for respondent asks for additional compensation. He was once given $150.00 and later $100.00. We think that is enough.

For reasons stated, this cause is reversed and remanded.

*Reversed and remanded.*