DONALD G. CONKLING ET AL., APPELLANTS, v. ALMA K. DELANY, JUSTICE OF THE PEACE, APPELLEE.

91 N W. 2d 250

Filed June 27, 1958.   No. 34373.

*Beatty, Clarke, Murphy & Morgan, Donald W. Peder-son, Frank E. Piccolo, Jr., and James E. Schneider,* for appellants.

*James G. McIntosh* and *Donald V. Lowe,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Lincoln County. It involves the question of whether or not a writ of prohibition should be issued against Alma K. DeLany, a justice of the peace. The trial court denied the appellants such relief by dismissing the action and they have taken this appeal therefrom after their motion for new trial had been overruled.

Nebraska has, with certain limitations and restrictions not applicable here, adopted the common law of England. See § 49-101, R. R. S. 1943. Consequently the common law writ of prohibition is available to litigants in this state and jurisdiction to grant the same is lodged in the district courts thereof. See State ex rel. Wright v. Barney, 133 Neb. 676, 276 N. W. 676.

However, with regard to our adoption of the common law of England we said, in Williams v. Miles, 68 Neb. 463, 94 N. W. 705, 110 Am. S. R. 431, 62 L. R. A. 383, that: "The term 'common law of England,' as used in the statute, refers to that general system of law which prevails in England, and in most of the United States by derivation from England, as distinguished from the Roman or Civil Law system, which was in force in this territory prior to the Louisiana purchase. Hence the statute does not require adher-

ence to the decisions of the English common-law courts prior to the Revolution, in case this court considers subsequent decisions, either in England or America, better expositions of the general principles of that system." And in State ex rel. Johnson v. Tautges, Rerat & Welch, 146 Neb. 439, 20 N. W. 2d 232, we held: "The common law is not immutable, but flexible, and by its own principles adapts itself to varying conditions."

In State ex rel. Wright v. Barney, *supra,* by quoting from High, Extraordinary Legal Remedies (3d Ed.) 705, we said: " 'The writ of prohibition may be defined as an extraordinary judicial writ, issuing out of a court of superior jurisdiction and directed to an inferior court, for the purpose of preventing the inferior tribunal from usurping a jurisdiction with which it is not legally vested. It is an original remedial writ, and is the remedy afforded by the common law to correct encroachments of jurisdiction by inferior courts, and is used to keep such courts within the limits and bounds prescribed for them by law. The object of the writ being to restrain subordinate judicial tribunals of every kind from exceeding their jurisdiction, its use in all proper cases should be upheld and encouraged, since it is of vital importance to the due administration of justice that every tribunal vested with judicial functions should be confined strictly to the exercise of those powers with which it has been by law entrusted.' " See, also, 73 C. J. S., Prohibition, § 2(b), p. 13; State ex rel. Micheel v. Vamos, 144 Ohio St. 628, 60 N. E. 2d 305; Marsh v. Goldthorpe, 123 Ohio St. 103, 174 N. E. 246; State ex rel. Burtzlaff v. Vickery, 121 Ohio St. 49, 166 N. E. 894; State ex rel. Burford v. Sullivan, 86 Okl. Cr. 364, 193 P. 2d 594; State ex rel. Wester v. Caldwell, 84 Okl. Cr. 334, 181 P. 2d 843; Harrison v. Murphy, 132 Fla. 579, 181 So. 386; State ex rel. Rheinauer v. Malone, 40 Fla. 129, 23 So. 575; 42 Am. Jur., Prohibition, § 6, p. 142. In State ex rel. Burford v. Sullivan, *supra,* by quoting from Rose v. Arnold, 183 Okl. 286, 82 P. 2d 293, the court said:

" ' "Prohibition" is an extraordinary judicial writ issuing out of a court of superior jurisdiction to keep inferior courts and tribunals within the limits and bounds prescribed for them by law, and its use in proper cases should be upheld and encouraged, since it is of vital importance to the due administration of justice that every tribunal vested with judicial functions should be confined to the exercise of those powers with which it has been by law intrusted.' " And, as stated in Van Dyke v. Superior Court of Gila County, 24 Ariz. 508, 211 P. 576, by quoting language from In re Rice, 155 U. S. 402, 15 S. Ct. 152, 39 L. Ed. 201: " 'Where it appears that a court whose action is sought to be prohibited has clearly no jurisdiction of the cause originally, or of some collateral matter arising therein, a party who has objected to the jurisdiction at the outset, and has no other remedy, is entitled to a writ of prohibition as a matter of right. But where there is another legal remedy by appeal or otherwise, or where the question of the jurisdiction of the court is doubtful, or depends on facts which are not made matter of record, or where the application is made by a stranger, the granting or refusal of the writ is discretionary.' " See, also, 42 Am. Jur., Prohibition, § 7, p. 143; Redewill v. Superior Court of Maricopa County, 43 Ariz. 68, 29 P. 2d 475.

In State ex rel. Wright v. Barney, *supra,* we went on to say, by quoting from 21 Standard Encyclopedia of Procedure, 801, that: " 'The writ of prohibition (in modern practice) is an extraordinary writ, issued by a superior court to an inferior judicial tribunal to prevent the latter from exceeding its jurisdiction, either by prohibiting it from assuming jurisdiction in a matter over which it has no control, or from exceeding its legitimate powers in a matter of which it has jurisdiction.' "

It is the general rule that prohibition cannot be resorted to when ordinary and usual remedies provided by law are adequate and available as it is not intended to be a substitute therefor. See, 42 Am. Jur., Prohibi-

tion, § 8, p. 144; 42 Am. Jur., Prohibition, § 7, p. 143; State ex rel. Rheinauer v. Malone, *supra;* State ex rel. Burford v. Sullivan, *supra;* State ex rel. Burtzlaff v. Vickery, *supra;* State ex rel. Brickell v. Roach, 122 Ohio St. 117, 170 N. E. 866; State v. Vamos, *supra;* Harrison v. Murphy, *supra;* Eberhardt v. Barker, 104 Fla. 535, 140 So. 633; Van Dyke v. Superior Court of Gila County, *supra;* Keefe v. District Court of Corbon County, 16 Wyo. 381, 94 P. 459; Jesmer Co. v. Wurde-mann-Hjelm Corp., 250 Minn. 574, 85 N. W. 2d 207; Bellows v. Ericson, 233 Minn. 320, 46 N. W. 2d 654. As stated in Harrison v. Murphy, *supra,* by quoting from 22 R. C. L., § 22, p. 23: " 'It is well established that a writ of prohibition may not ordinarily be used as a process for the review and correction of errors committed by inferior tribunals. Mere error, irregularity, or mistake in the proceedings of a court having jurisdiction does not justify a resort to the extraordinary remedy by prohibition, both because there has been no usurpation or abuse of power, and because there exists other adequate remedies. Whatever power is conferred may be exercised, and, if it be exercised injudiciously or irregularly, it amounts to an error merely, and not to a usurpation or excess of jurisdiction.' " However, the function of the writ, as evidenced by many cases herein cited, has been extended to cover situations where, even though the inferior tribunal had jurisdiction, the superior court deemed it necessary and advisable to issue the writ to prevent palpable and irremediable injustice, especially when it appeared there existed no adequate remedy by appeal or otherwise to prevent it from occurring. See, State ex rel. Burford v. Sullivan, *supra;* 73 C. J. S., Prohibition, § 4, p. 15; Harris Foundation v. District Court of Pottawatomie County, 196 Okl. 222, 163 P. 2d 976, 162 A. L. R. 272; Harrison v. Murphy, *supra;* 42 Am. Jur., Prohibition, § 8, p. 144; 42 Am. Jur., Prohibition, § 9, p. 145. As stated in State ex rel. Burford v. Sullivan, *supra,* by quoting from Harris Foundation v. District

Court of Pottawatomie County, *supra:* " 'Prohibition is the proper remedy where an inferior tribunal assumes to exercise judicial power not granted by law, or is attempting to make an unauthorized application of judicial force, and the writ will not be withheld because other concurrent remedies exist; it not appearing that such remedies are equally adequate and convenient.' "

· The record shows that on July 29, 1954, Elmer L. Moore, scale operator No. 38, filed a complaint in the office of appellee, a duly elected, qualified, and acting justice of the peace in Lincoln County, which complaint appellee had prepared. The complaint charged appellant Donald G. Conkling with having unlawfully operated a freight-carrying motor vehicle upon a public highway in Lincoln County, Nebraska, by reason of the fact that it weighed in excess of the limit then permitted by law. See § 39-722, R. S. Supp., 1953. Similar complaints were filed against appellants Ora Spence and Norman C. Jensen. Such complaints were properly filed in the office of the justice of the peace. See § 29-404, R. R. S. 1943.

These complaints, being within the jurisdiction of the justice court, were proper for her to hear. See, Art. V, § 18, Constitution of Nebraska; § 39-723.06, R. S. Supp., 1953. Appellants' special appearances having been overruled the appellee set the complaint for hearing at 11 a.m. on September 11, 1954. This action was filed by appellants on September 9, 1954, in behalf of themselves and "other persons similarly situated." No further action has been taken by appellee on the complaints filed.

The record shows appellee holds court on every other day for 24 hours a day and that O. A. Johnson, another justice of the peace in Lincoln County, holds court on alternate days for 24 hours a day, thus making available a justice of the peace court at all times; that appellee holds court either in the county courthouse or in her home; that in 1954 there were 833 misdemeanor

cases filed in her court; and that in 1954 she found the defendants guilty in 798 misdemeanor cases and assessed fines, although it appears that in 1954 she found a few (3) defendants not guilty. However, she did not file any claims against Lincoln County in 1954 for costs in the cases in which she found the defendants not guilty for she knew she could not recover such costs from the county unless the action, in which the costs accrued, had either been instituted with the consent of the county attorney or had been approved by him in writing after it had been instituted. See §§ 29-2709 and 29-2703, R. R. S. 1943. Neither of these requirements was complied with in these 798 cases and this seems to have been the procedure followed in succeeding years in misdemeanor cases, at least up to the time of trial of this cause, which was on October 11, 1957.

Section 33-134, R. R. S. 1943, provides, insofar as here material, that: "Justices of the peace shall receive for their services the following fees: * * * (2) in criminal matters, for any and all services rendered up to and including the judgment or dismissal of the action and the issuance of mittimus or discharge to the jailer, the sum of four dollars; * * *."

Section 29-2709, R. R. S. 1943, provides, insofar as here material, that: "Magistrates and clerks of court may furnish to the county clerks of their respective counties certified copies of any cost bills that are not collectible in cases of misdemeanor, peace warrant and juvenile causes; * * *. At the first meeting of the county board in each county in the months of April and October of each year, the board shall appropriate from the general fund a sum sufficient to pay all such bills, or parts thereof, as may be found to be lawful and just, and thereupon the board shall audit all such bills in the manner required by law; *Provided, no costs shall be allowed in any case unless the suit shall have been instituted with the consent of the county attorney, or,*

*after being brought, he shall approve of such action in writing."* (Emphasis ours.)

Section 29-2703, R. R. S. 1943, provides, insofar as here material, that: "No costs shall be paid from the county treasury in any case of prosecution for a misdemeanor * * * except as provided in section 29-2709."

It thus becomes evident that a justice of the peace in a misdemeanor case is dependent entirely upon a conviction for his $4 fee unless the requirements of section 29-2709, R. R. S. 1943, have been fulfilled, which is not the situation here.

Section 24-315, R. R. S. 1943, provides, insofar as here material, that: "A judge or justice is disqualified from acting as such in the county, district or Supreme Court, except by mutual consent of the parties, in any case wherein he is * * * interested, * * *." We said in Chicago, B. & Q. R. R. Co. v. Kellogg, 54 Neb. 138, 74 N. W. 403, that: "* * * the word 'interested' found in this section of the statute probably means pecuniarily interested, or, at least, it means that a judge, to be disqualified from hearing a case, must be in such a situation with reference to it or the parties that he will gain or lose something by the result of the action on trial." And in Uerling v. State, 125 Neb. 374, 250 N. W. 243, we said: "Interest of the trial judge in the outcome of an action to disqualify must be of a pecuniary nature."

While the statute does not relate specifically to a justice of the peace court we said in Walters v. Wiley, 1 Neb. (Unoff.) 235, 95 N. W. 486, that: "This statute is declaratory of the principles of the common law and everyone must subscribe to the equity of the rule which declares that no one shall be a judge in his own case or where he is interested * * *." Therein we went on to say, by quoting from Oakley v. Aspinwall, 3 N. Y. 547, that: " 'The first idea in the administration of justice is that a judge must necessarily be free from all bias and partiality.' " Then we said: "Courts of all grades ought to regard with the most scrupulous care this pro-

vision of our statute and a justice of the peace, on his own motion, should refuse to act where he is disqualified." As stated in Tumey v. Ohio, 273 U. S. 510, 47 S. Ct. 437, 71 L. Ed. 749, 50 A. L. R. 1243: "There was at the common law the greatest sensitiveness over the existence of any pecuniary interest, however small or infinitesimal, in the justices of the peace. * * * There was * * * no usage at common law by which justices of the peace or inferior judicial officers were paid fees on condition that they convicted the defendants, and such a practice certainly can not find support as due process of law in English precedent."

It was held in Tumey v. Ohio, *supra*, that: "* * * it certainly violates the Fourteenth Amendment, and deprives a defendant in a criminal case of due process of law, to subject his liberty or property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case." Therein the court said: "There is * * * no way by which the Mayor may be paid for his service as judge, if he does not convict those who are brought before him; * * *." It then went on to hold: "* * * we conclude, that a system by which an inferior judge is paid for his service only when he convicts the defendant has not become so embedded by custom in the general practice either at common law or in this country that it can be regarded as due process of law, unless the costs usually imposed are so small that they may be properly ignored as within the maxim de minimis non curat lex.

"The Mayor received for his fees and costs in the present case $12, and from such costs under the Prohibition Act for seven months he made about $100 a month, in addition to his salary. We can not regard the prospect of receipt or loss of such an emolument in each case as a minute, remote, trifling or insignificant interest. It is certainly not fair to each defendant, brought before the Mayor for the careful and judicial consideration of his

'guilt or innocence, that the prospect of such a loss by the Mayor should weigh against his acquittal."

Here, for the year 1954, appellee convicted defendants in 798 cases for which she received a fee of $4, taxed as costs against the defendant in each case, or a total of $3,192, or at the rate of $266 per month. We cannot regard the prospect of receipt or loss of such an income as an insignificant interest.

It is an elementary proposition that every person accused of crime should have a fair and impartial trial. Coxbill v. State, 115 Neb. 634, 214 N. W. 256. As therein stated: "The Constitution of the United States and of this state guarantee a fair and impartial trial to every person accused of crime, * * *." Likewise he shall not be deprived of his liberty or property without due process of law. Dutiel v. State, 135 Neb. 811, 284 N. W. 321. As therein stated: "Both the Constitution of the United States and the Constitution of the state of Nebraska provide that no person shall be deprived of life, liberty, or property without due process of law."

A party has a right to have his case heard and determined by a judge who is not disqualified by interest from hearing and determining it. North Bloomfield G. M. Co. v. Keyser, 58 Cal. 315; Forest Coal Co. v. Doolittle, 54 W. Va. 210, 46 S. E. 238. As stated in Forest Coal Co. v. Doolittle, *supra*: "The authorities almost uniformly hold that when a judge of an inferior court is recused (incompetent to act) before judgment in a case in which he has an interest, such as disqualifies him, and a prohibition is applied for to restrain him from further sitting in the cause, it will be granted, if, upon the application therefor, it appears that he is disqualified. 'Prohibition is the proper remedy to prevent action by a judge who is disqualified by interest, or otherwise.' Works on Courts and their Jurisdiction, 638. 'A writ of prohibition will lie to restrain a judge from proceeding in an action in which he is disqualified by reason of interest, although the court over which he presides may have jur-

isdiction of the cause.' 23 Am. & Eng. Enc. Law, 2 Ed. 223."

The law could, in this situation, afford an individual, so charged, adequate remedy either by appeal or error proceeding. See, §§ 29-611 and 29-617, R. R. S. 1943. But, as we have already indicated, prohibition may, in the court's discretion, be granted in a proper case where the remedy by appeal or error is not adequate and, in this respect, each case must depend upon its own facts. As stated in 73 C. J. S., Prohibition, § 16, p. 90: "The question whether the remedy by appeal is adequate rests in the sound discretion of the court to which application is made. No hard and fast rule can be laid down to determine in advance whether the remedy by appeal fully meets the requirements of justice in a particular case, and the adequacy of such remedy in any given case is to be determined in the light of all the facts and circumstances. In determining the adequacy of a remedy by appeal the court will take into consideration various considerations of public interest and public policy, a possible multiplicity of suits, and irremediable injury to litigants; * * *." See, also, Brown v. Superior Court of San Francisco County (Cal. App.), 275 P. 811; Canaday v. Superior Court of Newcastle County, 49 Del. 332, 116 A. 2d 678.

Here the evidence establishes that in 1954 appellee presided as the justice in 798 misdemeanor cases wherein she convicted the party so charged when, in fact, she was disqualified to act and that such practice is being continued. Under such a situation we think, because of the public interest and concern in every one charged with a crime being tried before a disinterested and qualified judge, that the only solution to this problem is to grant the writ and prevent appellee from acting further as a justice in all cases in which she is disqualified. This would not prevent the appellee from acting as justice of the peace in such cases if she removes her disqualification by having the requirements of section

29-2709, R. R. S. 1943, complied with in each case.

In view of the foregoing we think the trial court erred in refusing to issue the writ prayed for and dismissing appellants' action. We therefore reverse its judgment doing so and remand the cause with directions to grant the relief prayed for by appellants.

REVERSED AND REMANDED WITH DIRECTIONS.