**Lenora Eloise THOMAS, Petitioner,**

**v.**

**The JUSTICE COURT OF WASHAKIE COUNTY, Wyoming, and the Honorable Ray Pendergraft, Justice of the Peace, Respondents.**

**No. 4538.**

Supreme Court of Wyoming.

July 14, 1975.

James H. Sperry, Sperry & Obert, Worland, for petitioner.

Robert A. Jones, Washakie County and Pros. Atty., for respondents.

Before GUTHRIE, C. J., and Mc-CLINTOCK, RAPER, THOMAS and ROSE, JJ.

McCLINTOCK, Justice.

Lenora Eloise Thomas, charged in Justice Court of Washakie County, Wyoming with the crime of manslaughter in violation of § 6–58, W.S.1957 by original proceedings in this Court seeks to prohibit the said justice court and Ray Pendergraft, a nonlawyer justice of the peace of that court, from proceeding with preliminary hearing of the matter. On or about January 31, 1975 one Jerry Wayne Thomas, husband of the petitioner, was found dead alongside U.S. Highway 20, approximately nine miles north of Worland, Wyoming. Petitioner was arrested and charged with voluntary manslaughter, a felony. A preliminary hearing was set for April 7, 1975 by Ray Pendergraft, the acting and qualified justice of the peace of Washakie County, who is not an attorney. The present proceeding was filed after he had denied motion of the accused to call in an attorney-justice to hear the matter.

Judge Pendergraft was appointed justice of the peace on January 7, 1975, pursuant to provisions of §§ 5–99.2 and 5–99.3, W.S. 1957, 1973 Cum.Supp. No question is raised as to his probity and lack of bias, and the issue under the application is whether it is a denial of due process in violation of Art. 1, § 6 of the Wyoming Constitution and the Fourteenth Amendment to the Constitution of the United States for Judge Pendergraft, a nonattorney justice of the peace, to conduct a preliminary hearing in this matter.

Although neither party has raised the question, we think that before we reach the issue on the merits we must first determine whether it is proper for this Court,

under its rules and previous decisions, to exercise jurisdiction of the matter.[1]

We have previously held that we would not in advance of a trial upon the merits of a criminal charge determine the constitutionality of the statute under which the defendant was charged. In State of Wyoming ex rel. Owen v. District Court of Sheridan County, Wyo., 393 P.2d 806 (1964), it is said:

"It is unnecessary to consider the question of the statute's validity on any basis since it is elementary that a writ of prohibition will issue only when the party seeking it is without other adequate means of redress for a wrong about to be inflicted by act of an inferior tribunal. * * * If by attacking a complaint upon constitutional grounds any person charged with a crime were able to cause the supreme court to proceed against the forum of the criminal action, the usual course in the administration of criminal law would be disrupted. No sufficient cause for the issuance has been presented, and the writ must be denied."

In State ex rel. Sheehan v. District Court of the Fourth Judicial District, Wyo., 426 P.2d 431, 437 (1967), we said:

"Prohibition tests only jurisdiction. It will not issue where there is a plain, adequate and speedy remedy in the ordinary course of the law."

In Miskimmins v. Shaver, 8 Wyo. 392, 58 P. 411 (1899) it is said that where a court proceeds in an unconstitutional manner the effect thereof is to destroy the jurisdiction of the court, so it follows that if the justice court was proceeding in an unconstitutional manner so as to deny the petitioner due process of law it would be a proper case for prohibition, provided that there is no plain, speedy, and adequate remedy in the ordinary course of law. As we were advised at the oral argument, petitioner is presently free on her own recognizance, but it was argued that there is no assurance that this condition will continue and that if after the preliminary hearing bond is required, defendant may not be in a position to deposit it. The possibility therefore exists that she could be deprived of her liberty pending final disposition of the charge. She is presently represented by court-appointed counsel, as assured by our law to protect the rights of needy persons, so we may agree with counsel that the requirement to deposit any surety or other bond in any material amount could present a problem that might result in her incarceration.

We think that Conkling v. De Lany, 167 Neb. 4, 91 N.W.2d 250 (1958) is pertinent on the question whether we should exercise jurisdiction. In that case contention was made in the district court that a justice of the peace was disqualified for personal interest in the outcome of the case, and a

---

1. In this case no application was made to the district court. Our constitution establishes jurisdiction of that court in "all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court * * *." Article 5, § 2 of the Wyoming Constitution vests this Court with "a general superintending control over all inferior courts, under such rules and regulations as may be prescribed by law," and by Art. 5, § 3 it is given "power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari and other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction. * * *" Article 5, § 10 vests the district courts with "original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court * * *. Said courts and their judges shall have power to issue * * * writs of * * * prohibition * * *."

Section 5-99.7, W.S.1957, 1973 Cum.Supp. declares that this Court "is hereby vested with supervisory powers over the justice courts of the State of Wyoming * * *." Counsel for petitioners has advised us that he could find no statute or rule of civil procedure relative to the exercise of jurisdiction by a district court in a writ of prohibition and we have found none. The only rule setting forth a procedure for such applications is our Rule 17 which relates only to filing in this Court. We therefore have no doubt as to our general jurisdiction and power to act in this matter.

writ of prohibition against her was sought in district court. Upon denial of the writ, appeal was taken to the Supreme Court of Nebraska. The court said, 91 N.W.2d at 253:

"It is the general rule that prohibition cannot be resorted to when ordinary and usual remedies provided by law are adequate and available as it is not intended to be a substitute therefor. * * * However, the function of the writ, as evidenced by many cases herein cited, has been extended to cover situations where, even though the inferior tribunal had jurisdiction, the superior court deemed it necessary and advisable to issue the writ to prevent palpable and irremediable injustice, especially when it appeared there existed no adequate remedy by appeal or otherwise to prevent it from occurring."

The court then continued, 91 N.W.2d at 256:

"A party has a right to have his case heard and determined by a judge who is not disqualified by interest from hearing and determining it. * * * As stated in Forest Coal Co. v. Doolittle, supra, 54 W.Va. 210, 46 S.E. 238, 239: 'The authorities almost uniformly hold that when a judge of an inferior court is recused (incompetent to act) before judgment in a case in which he has an interest, such as disqualifies him, and a prohibition is applied for to restrain him from further sitting in the cause, it will be granted, if, upon the application therefor, it appears that he is disqualified. "Prohibition is the proper remedy to prevent action by a judge who is disqualified by interest or otherwise." Works on Courts and their Jurisdiction, 638. "A writ of prohibition will lie to restrain a judge from proceeding in an action in which he is disqualified by reason of interest, although the court over which he presides may have jurisdiction of the cause." 23 Am. & Eng.Enc.Law, 2 Ed. 223.'"

The court then considered facts showing that the justice had decided a large number of cases in which she had been disqualified by personal interest and that the practice was continuing:

"* * * Under such a situation we think, because of the public interest and concern in every one charged with a crime being tried before a disinterested and qualified judge, that the only solution to this problem is to grant the writ and prevent appellee from acting further as a justice in all cases in which she is disqualified. This would not prevent the appellee from acting as justice of the peace in such cases if she removes her disqualification by having the requirements of section 29–2709, R.R.S.1943, complied with in each case."

Taking judicial notice of our own records collated in the course of our supervisory powers over the justice of the peace courts, we note that at the present time there are 23 justices of the peace in this state who are members of the bar and 16 who are nonmembers. It therefore follows that the occasion for preliminary hearings before nonlegal justices could be fairly frequent and unless the question is now decided doubt upon the point may continue for some time, to the vexation of persons accused of felonies and the uncertainty of their attorneys as to the proper proceeding.

█ It is apparent that the issue involved in the application is one which, in view of Gordon v. Justice Court for the Yuba Judicial District of Sutter County, 12 Cal.3d 323, 115 Cal.Rptr. 632, 525 P.2d 72 (1974) may be consistently raised in all preliminary hearings in criminal cases where the justice of the peace is a nonlawyer. This indicates that the question is one of serious public interest and one that should be laid to rest at the earliest opportunity. While the question could have been saved and raised on appeal and any uncertainty concerning the petitioner's immediate status would have been eliminated

by a finding by the justice of no probable cause for the criminal complaint, we believe that the circumstances of this case are sufficiently exceptional to justify exercise of jurisdiction in the first instance.

■ Proceeding to the merits of the cause, we conclude that the holding of a preliminary hearing or examination by a nonlawyer justice of the peace in a felony matter does not constitute a denial of due process and the application for writ of prohibition should be denied.

Since the 1869 enactment of laws for the territory of Wyoming, our law has directed that a person arrested for felony shall be taken before a justice of the peace for the purpose of inquiry into the complaint. "If upon the whole examination, it appears that there has been no offense committed, or that there is not probable cause for holding the prisoner to answer the offense, he shall be discharged." Chapter 74, § 36, S.L. of Wyoming 1869, now § 7–173, W.S. 1957. If the justice finds such offense and probable cause to hold the suspect he is required to provide for proper bond in all bailable offenses. Generally speaking, these statutory provisions have remained in effect without substantial change since 1869. In 1972 this Court adopted the Wyoming Rules of Criminal Procedure, which in part superseded previous statutes but did not eliminate the provision just quoted. In pertinent part Rule 7(b), W.R.Cr.P. now provides:

"If the defendant does not waive examination, the commissioner shall hear the evidence within a reasonable time. The defendant may cross-examine witnesses against him and he may introduce evidence in his own behalf. If from the evidence it appears to the commissioner that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the commissioner shall forthwith hold him to answer in the district court; otherwise the commissioner shall discharge him. The commissioner shall admit the de-

fendant to bail as provided in these rules."

For many years justices of the peace were not required to be lawyers. This was partially changed by Ch. 214, S.L. of Wyoming 1971, § 5–99.1 et seq., W.S.1957, 1973 Cum.Supp., which provides that to be qualified for *election* to the office the candidate must be authorized to practice law in Wyoming. However, even an attorney running for the office without opposition may not be considered elected unless he polls a majority of "the votes of all electors voting" in the election and in the absence of such majority the Board of County Commissioners of the particular county is authorized to appoint a person and "[s]uch appointee may be a person who is not authorized to practice law in Wyoming," § 5–99.2, W.S.1957, 1973 Cum.Supp. Similarly, when any vacancy occurs in the office the county commissioners are authorized to appoint someone to serve until the next general election. Section 5–99.3, W. S.1957, 1973 Cum.Supp. There is nothing to indicate that such appointee is required to be an attorney and, as we have previously pointed out, Judge Pendergraft was appointed under the provisions of the law.

Petitioner's whole case is predicated on the recent decision of the Supreme Court of California, Gordon v. Justice Court for the Yuba Judicial District of Sutter County, 12 Cal.3d 323, 115 Cal.Rptr. 632, 525 P. 2d 72, 74 (1974), in which that court, in holding that it is constitutionally required that the trial of misdemeanor cases carrying with them the possibility of imprisonment be conducted before a lawyer justice of the peace, in a footnote makes this observation:

" * * * Although petitioners were not charged with felony offenses and, accordingly, the question is not before us, we fail to see any distinction of consequence between misdemeanor trials involving a potential jail sentence, and felony preliminary examinations which present similar potential loss of freedom. Thus, a strong argument could be made

that an attorney judge is essential to afford the defendant due process during the preliminary hearing."

We think there is an important and obvious distinction. The finding of guilty in the misdemeanor trial (subject only to a right of appeal which is specifically rejected by the California court as being a ready source of relief) is a final judgment; the finding of probable cause after the preliminary hearing [2] determines only the propriety of a trial, complete in every way with every protection that the constitution, laws and decisions of this state have been able to develop. The problems which the California court lists as presenting difficult legal questions in misdemeanor trials necessitating the presence of a lawyer-justice: existence of complex legal questions, perhaps of constitutional nature; difficult evidentiary problems; conduct of jury trial and ruling on questions of evidence; acceptance of guilty pleas and instruction to the defendant as to the effect of the plea; lack of expertise to make proper sentencing decisions; are inapplicable to preliminary examinations wherein procedures are historically more informal and the only question is whether there is probable cause to conclude that a crime has been committed and that the accused has committed it.

It has been held that a person accused of crime "requires the guiding hand of counsel at every step of the proceedings against him," Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 84 A.L.R. 527 (1932), and it must be guaranteed to the accused "that he need not stand alone against the state at any stage of the prosecution, formal or informal, where counsel's absence might derogate from the accused's right to a *fair trial*," (emphasis supplied)

United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Although Gerstein v. Pugh, 420 U.S. 105, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) casts some doubt as to whether the preliminary hearing is in all jurisdictions a critical stage in the proceedings, Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) indicates that under Alabama law it is such a critical stage and that counsel is then required since the hearing gives the defendant the opportunity to cross examine so as to disclose fatal weaknesses in the State's case, perhaps resulting in a finding of no probable cause, gives opportunity to fashion an impeachment tool or preserve favorable testimony for use at the trial, may be used for discovery, and counsel can more effectively argue for psychiatric examination and admission to bail.

In pursuit of its inquiry as to whether a *trial* before a nonlawyer justice of the peace comports with the demands of due process, which question deals with the further question whether there has been a fair trial, or, more accurately, the likelihood that there will be a fair trial, *Gordon* accepts as completely analogous and authoritative those decisions requiring the appointment of counsel. It is said, 525 P.2d at 78:

"* * * Since our legal system regards denial of counsel as a denial of fundamental fairness, it logically follows that the failure to provide a judge qualified to comprehend and utilize counsel's legal arguments likewise must be considered a denial of due process."

Decisions from other states [3] taking a different view are rejected because none of them "convincingly resolved the inherent inconsistency in guaranteeing a defendant an attorney to represent him without pro-

---

2. Such determination comes with the detention and possible incarceration of the defendant if he cannot post bond and, as we shall see later, this is the reason for imposing Fourth Amendment requirements as to the conduct of the hearing. Nevertheless, it is in no sense a trial.

3. Ditty v. Hampton, Ky., 490 S.W.2d 772 (1972), appeal dismissed, 414 U.S. 885, 94 S.Ct. 219, 38 L.Ed.2d 133; Crouch v. Justice of Peace Court of Sixth District, 7 Ariz. App. 460, 440 P.2d 1000 (1968); City of Decatur v. Kushmer, 43 Ill.2d 334, 253 N.E.2d 425, 428 (1969).

viding an attorney judge to preside at the proceedings."[4]

Conceding that the techniques mentioned in *Coleman* are important elements in the preparation of a case, and bearing in mind that our rule permits cross examination of state witnesses and the presentation of evidence in behalf of defendant, so that it can properly be said that the preliminary examination is under Wyoming law a critical stage of the proceedings, we cannot conclude that the defense has a constitutional right to turn the preliminary examination into a full trial and present all defenses, affirmative and otherwise, and thereby secure a complete dismissal of the charge. Under our law the finding of no probable cause does not constitute an acquittal and there would be no bar that we can see to another proceeding before another justice of the peace or for a proceeding by indictment.[5] In proceedings for indictment, not only would the defendant have no counsel but he would have no right of cross examination or to present witnesses in his own behalf.

■ We think that petitioner misses the real constitutional purpose of the preliminary examination which is only to determine if the accused is properly detained to answer the charge. It is clearly pointed out in Gerstein v. Pugh, *supra,* that protection of Fourth Amendment rights [6] against unfounded invasion of liberty and property requires a determination of probable cause

by someone other than the prosecutor himself, but (420 U.S. at 112, 95 S.Ct. at 862).

" '[t]he rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests [enforcement of the laws for the community's protection as against protection from mistakes on the officers' part] * * *.' *Brinegar v. United States* 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

"To implement the Fourth Amendment's protection against unfounded invasions of liberty and privacy, the Court has required that the existence of probable cause be decided by a neutral and detached magistrate whenever possible. The classic statement of this principle appears in *Johnson* v. *United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436, (1948):

" 'The point of the Fourth Amendment, which often is grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' "

The court accordingly held that the Fourth Amendment required a judicial determina-

---

4. An interesting query is left unanswered by *Gordon* in that both the Fourteenth Amendment of the federal constitution and Art. 1, § 6 of the Wyoming Constitution require that a person shall not be deprived of life, liberty, or *property* without due process of law. How can it be due process for a nonlawyer justice to deprive a defendant of his property by fine, or a civil litigant of his property by judgment, yet not be due process to deprive him of his liberty? The query is not original with the writer of this opinion, but was suggested by Mr. Justice Powell's concurring opinion in Argersinger v. Hamlin, 407 U.S. 25, 51, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

5. While we have no precedents from this Court specifically ruling on the effect of a

discharge on preliminary examination, it could hardly be said that such constituted jeopardy, and in 21 Am Jr 2d Criminal Law § 450, p. 452 it is said that "the discharge does not bar the filing of a new complaint with another magistrate and does not bar a prosecution of the alleged offense by indictment."

6. "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated * * *." Article 1, § 4 of the Wyoming Constitution contains identical language and all observations which we make with respect to the federal constitution may be considered as equally applicable to our state constitution.

tion of probable cause as a prerequisite to extended restraint on liberty following arrest and that mere prosecutorial judgment did not meet the requirement of the amendment. The court, however, adhered to its former ruling in Beck v. Washington, 369 U.S. 541, 545, 82 S.Ct. 955, 8 L. Ed.2d 98 (1962), (420 U.S. at 119, 95 S.Ct. at 865, 866),

> "that a judicial hearing is not prerequisite to prosecution by information. * * * Thus, as the Court of Appeals noted below, although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause.[7]
>
> * * * * * *
>
> "[A]dversary safeguards are not essential for the probable cause determination required by the Fourth Amendment. The sole issue is whether there is probable cause for detaining the arrested person pending further proceedings. This issue can be determined reliably without an adversary hearing. The standard is the same as that for arrest. The standard—probable cause to believe the suspect has committed a crime—traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony, and the court has approved these informal modes of proof.
>
> * * * * * *
>
> "'In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life *on which reasonable and prudent men, not legal technicians, act.* The standard of proof is accordingly correlative to what must be proved.' *Brinegar* v. *United States,* 338 U.S. 160, 174–175, 69 S.Ct. 1302, 93

L.Ed. 1879, (1949)." (Emphasis supplied.)

and continues (420 U.S. at 121, 95 S.Ct. at 867),

> "The use of an informal procedure is justified not only by the lesser consequences of a probable cause determination but also by the nature of the determination itself. It does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt. * * *"

Considering, then, that the only *constitutional* basis for the preliminary hearing is to insure against improper detention, the fact that the Wyoming legislature and this Court may by statute and rule have given the accused certain greater rights, that is, the right of cross-examination and to present witnesses in his own behalf, does not expand the limited constitutional right to have a detached and neutral person determine that the charge has foundation in fact. The attorney who addresses this person in behalf of his client is speaking to a lay person just as upon the trial of the case he would speak to laymen. Were we to concede that upon the *trial* of the case, where evidence must be offered and received or rejected, where the evidence that is received must be weighed, where legal decisions must be reached in the determination as to whether the defendant is or is not guilty, there should be a lawyer-justice —a point we specifically do not reach—we could not conclude that a preliminary examination must have all the attributes of a *trial.*

In Crouch v. Justice of Peace Court of Sixth Precinct, 7 Ariz.App. 460, 440 P.2d 1000, 1006 (1968) it is said:

> "Generally speaking, the denial of due process is a denial of 'fundamental fair-

---

7. If we correctly interpret these decisions, the effect is whether a proper preliminary examination was had or whether it was properly conducted is unimportant in considering on appeal the legality of the conviction of the defendant. This appears to be the position taken by this Court in State v. Spears, 76 Wyo. 82, 300 P.2d 551 (1956), and State v. Vines, 49 Wyo. 212, 54 P.2d 826 (1935).

ness, shocking to the universal sense of justice'. Kinsella v. United States ex rel. Singleton, 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960). Speaking of due process of law, our United States Supreme Court has said that a state is free to 'regulate the procedure of its courts in accordance with its own conception of policy and fairness unless in so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. * * * Its procedure does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at the bar.' Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934)." [8]

Upon this analysis we believe Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) is quite pertinent. In that case, holding that the due process clause required a hearing before a convicted and paroled defendant could be found guilty of parole violation and therefore subject to penalty for such violation, the court specifically ruled that the due process in such a hearing required among other things "a 'neutral and detached' hearing body such as a traditional parole board, *members of which need not be judicial officers or lawyers;*" (emphasis supplied) 408 U.S. at 489, 92 S.Ct. at 2604. The following language is also highly significant, *id.* at 485, 92 S.Ct. at 2602:

"* * * [D]ue process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available. * * * Such an inquiry should be seen as in the nature

of a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions."

■■ The function of the preliminary hearing is not to determine guilt or innocence, however eager the petitioner and her counsel may be to establish innocence at this stage of the proceedings. A finding of no probable cause by the justice would not constitute a verdict of acquittal and would not assure petitioner that she may not be proceeded against by indictment or by the filing of another information before another justice of the peace. Under such circumstances we see no need to upset a system that has been in operation in this state since 1869, with only recent provision in our law tending toward the designation of justices of the peace having legal training. We do not deny the merits of this approach but hold that insofar as preliminary hearings are concerned there is no denial of due process under either the federal or Wyoming constitutions.

The petition for writ of prohibition is denied, and the alternative writ issued from this Court on April 4, 1975 is dissolved.

GUTHRIE, Chief Justice (concurring).

Although I concur without reservation in the majority holding in this case insofar as the principal question is concerned, I do confess an unease in agreeing that this case presents a proper basis for a writ of prohibition. I do not, however, dissent to that phase of the opinion because of the view of my brothers that it is a proper case for the exercise hereof and of the admitted importance and possible far-reaching effect of such a contention.

8. This particular decision involved the trial of a misdemeanor and appears directly contrary to *Gordon* in its holding. In State v. Dziggel, 16 Ariz.App. 289, 492 P.2d 1227, 1229, the question related to the holding of a preliminary hearing by a nonlawyer justice and the court, referring to *Crouch* as disposing of the precise question, held that there had been no denial of due process.

It appears necessary to the writer that his concurrence not be interpreted as a reversal, modification, or departure from the rule of the case of State ex rel. Owen v. District Court of Sheridan County, Wyo., 393 P.2d 806. Nor do I extend the scope of Miskimmins v. Shaver, 8 Wyo. 392, 58 P. 411, 49 L.R.A. 831, so far as my brothers apply it herein, believing that the holding should be confined to the factual situation.

ROSE, Justice (dissenting).

I agree with the majority opinion on the issue of whether it is proper for this court under its rules and previous decisions to exercise jurisdiction in this matter.

I disagree with the majority on the principal question.

In Wyoming, in determining probable cause in preliminary hearings before a justice of the peace, we have adopted an adversary procedure.[1]

The majority opinion, referring to Gordon v. Justice Court for Yuba Judicial District of Sutter County, 12 Cal.3d 323, 115 Cal.Rptr. 632, 525 P.2d 72, reh. den. (1974), where the question under consideration was whether it was constitutionally required that a justice of the peace conducting a misdemeanor trial be a lawyer, calls attention to a footnote in that case[2] and observes as follows:

> "We think there is an important and obvious distinction. The finding of guilty in a misdemeanor trial (subject only to a right of appeal which is specifically re-

jected by the California court as being a ready source of relief) is a final judgment; the finding of probable cause after the preliminary hearing . . . . determines only the propriety of a trial, complete in every way with every protection that the Constitution, laws and decisions of this state have been able to develop. The problems which the California court lists as presenting difficult legal questions in misdemeanor trials necessitating the presence of a lawyer justice: existence of complex legal questions, perhaps of constitutional nature; difficult evidentiary problems; conduct of jury trial and ruling on questions of evidence; acceptance of guilty pleas and instruction to the defendant as to the effect of the plea; lack of expertise to make proper sentencing decisions; are inapplicable to preliminary examination wherein procedures are historically more informal and the only question is whether there is probable cause to conclude that a crime has been committed and that the accused has committed it."

Of course it is true that in a probable cause inquiry in our justice courts in felony proceedings, there would be no necessity for the justice of the peace to conduct a jury trial. However, I cannot agree that the other problems are "inapplicable" and there *would be* a necessity for the justice to be able to contemplate intelligently and professionally the other matters enumerated in *Gordon,* supra.

To me there is an analogy between the matter with which we are here concerned

---

1. In applicable part, Rule 7(b), Wyoming Rules of Criminal Procedure, provides:

    "If the defendant does not waive examination, *the commissioner shall hear the evidence within a reasonable time. The defendant may cross-examine witnesses against him and he may introduce evidence in his own behalf. If from the evidence it appears to the commissioner that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the commissioner shall forthwith hold him to answer in the district court; otherwise the commissioner shall discharge him. The commissioner shall admit the*

*defendant to bail as provided in these rules."* [Italics mine]

2. "Although petitioners were not charged with felony offenses and, accordingly, the question is not before us, we fail to see any distinction of consequence between misdemeanor trials involving a potential jail sentence, and felony preliminary examinations which present similar potential loss of freedom. Thus, a strong argument could be made that an attorney judge is essential to afford the defendant due process during the preliminary hearing."

and the right of the indigent accused to have an attorney by his side at all critical stages of the criminal process—including the preliminary hearing where probable cause is the ultimate question in jurisdictions which have adopted the adversary procedure at the justice court level.

In his consideration of corollary matters decided by the United States Supreme Court, Mr. Justice McClintock observes in the majority opinion the following:

". . . . that a person accused of a crime 'requires the guiding hand of counsel at every step of the proceedings against him,' Powell v. Alabama, 287 U. S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527 (1932), and it must be guaranteed to the accused 'that he need not stand alone against the state at any stage of the prosecution, formal or informal, where counsel's absence might derogate from the accused's right to a *fair trial*,' (emphasis supplied) United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967). Although Gerstein v. Pugh, 420 U.S. 105, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) casts some doubt as to whether the preliminary hearing is in all jurisdictions a critical stage in the proceedings, Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) indicates that under Alabama law it is such a critical stage and that counsel is then required since the hearing gives the defendant the opportunity to cross examine so as to disclose fatal weaknesses in the State's case, perhaps resulting in a finding of no probable cause, gives opportunity to fashion an impeachment tool or preserve favorable testimony for use at the trial, may be used for discovery, and counsel can more effectively argue for psychiatric examination and admission to bail."

As the majority opinion recognizes, the United States Supreme Court has held (Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 287) that a preliminary hearing is such a "critical stage" of the criminal process as to require the defend-

ant be furnished counsel where probable cause is the ultimate question in jurisdictions employing adversary techniques. If we accept *Coleman* to be the law, I am simply unable to see why the same rule is not applicable, in the overall process of protecting the accused's Fourteenth Amendment rights, when the question is one of whether or not the judge who is to make the decisions on these complicated legal questions will be learned in the law.

In deciding that indigent defendants had a right to counsel at the preliminary hearing stage where probable cause is the ultimate question, in Coleman v. Alabama, supra, the United States Supreme Court there made observations that I think are pertinent here:

In Alabama a preliminary hearing was not a required step in the prosecution—the prosecutor could seek, under Alabama statutes, an indictment directly without a preliminary hearing (as he may do in Wyoming)—in Alabama the accused is not required to advance any defense and any failure to do so does not preclude him from availing himself of every defense he may have upon the trial of the case—Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), bars the admission of testimony given at a pretrial proceeding where the accused did not have the benefit of cross-examination by and through counsel and therefore, in absence of counsel, nothing occurring at the preliminary hearing in Alabama can substantially prejudice the rights of the accused on trial. Notwithstanding the above, the Court in *Coleman* says:

"However, from the fact that in cases where the accused has no lawyer at the hearing the Alabama courts prohibit the State's use at trial of anything that occurred at the hearing, *it does not follow that the Alabama preliminary hearing is not a 'critical stage' of the State's criminal process.* The determination whether the hearing is a 'critical stage' requiring the provision of counsel depends, as noted, upon an analysis 'wheth-

er potential substantial prejudice to defendant's rights inheres in the . . . confrontation and the ability of counsel to help avoid that prejudice.'" (Citing Wade, supra) [Italics mine]

The Court goes on to say:

"Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution. *First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail.*" [Italics mine]

The Court then held:

"The inability of the indigent accused on his own to realize these advantages of a lawyer's assistance compels the conclusion that *the Alabama preliminary hearing is a 'critical stage' of the State's criminal process at which the accused is 'as much entitled to such aid [of counsel] * * * as at the trial itself.'* Powell v. Alabama, supra, 287 U.S. at 57, 53 S.Ct. at 60." [Italics mine]

In the case before us here, the author of the majority opinion says:

"Conceding that the techniques mentioned in *Coleman* are important elements in

the preparation of a case, and bearing in mind that our rule permits *cross examination of state witnesses and the presentation of evidence in behalf of defendant, so that it can properly be said that the preliminary examination is under Wyoming law a critical stage of the proceedings,* we cannot conclude that the defense has a constitutional right to turn the preliminary examination into a full trial and present all defenses, affirmative and otherwise, and thereby secure a complete dismissal of the charge." [Italics mine]

With this recognition that under Wyoming law as expressed by Rule 7(b), W.R. Cr.P., providing for an adversary procedure, the preliminary examination (where probable cause is the ultimate determination) is a "critical stage of the proceedings," I think it is dangerous to then conclude that the "constitutional right" involved herein is:

"to turn the preliminary examination into a full trial and present all defenses, affirmative and otherwise, and thereby secure a complete dismissal of the charge."

The "constitutional right" involved, it seems to me, is not whether the accused will be permitted to turn the preliminary hearing into a full trial, but whether his Fourteenth Amendment rights can be protected in the give and take of an adversary procedure in which an attorney *must* be provided because of the uniquely complicated aspects of the hearing and yet the judge is without the knowledge requisite to manage the technicalities that *Coleman* speaks about and which the majority identifies as:

"important elements in the preparation of a case. . . ."

The majority opinion says:

". . . . *Gordon* (supra) accepts as completely analogous and authoritative those decisions requiring the appointment of counsel. It is said, 525 P.2d at 78: '* * * Since our legal system re-

gards denial of counsel as a denial of fundamental fairness, it logically follows that the failure to provide a judge qualified to comprehend and utilize counsel's legal arguments likewise must be considered a denial of due process.' "

The majority does not accept this analogy—I do. It is in this very area that I simply cannot agree with my brothers of the court.

How can it be said that it is a violation of the defendant's rights under the Fourteenth Amendment and Article 1, Section 6, of the Wyoming Constitution to deny the accused an attorney at a preliminary hearing, but that it is not a denial of those same rights to *deny him a judge learned in the law who can understand the attorney?*

At a "critical stage" of the criminal process where the accused's freedom is in the balance and "fair trial" is the issue, what good is it for the accused to be protected by a rule of law which says he is

" 'as much entitled to such aid [of counsel] . . . . as at the trial itself.' ", (Powell v. Alabama, from Coleman v. Alabama, supra)

when we don't go on to say that this entitlement at this critical stage of the criminal process includes a judge who will be able to understand and comprehend counsel's representation with respect to specialized areas of the law involving, for example, the guilty plea—the right to psychiatric examination—right to bail—direct examination of witnesses—cross-examination of witnesses—and even the ultimate decision of whether or not the state has made a case against the accused and whether or not, therefore, under the applicable authority, the magistrate should refuse to bind the accused over?

If the magistarate is not learned in the law, how can he tell whether or not a lawyer who is required by the Fourteenth Amendment to the United States Constitution to be serving the accused, has

"exposed a fatal weakness in the State's case."?

If the magistrate cannot recognize a "fatal weakness in the State's case," then it follows that he cannot know whether to bind the accused over.

If "erroneous or improper prosecution" (*Coleman*) takes place and the lawyer is present to call these intricate matters to the court's attention, must not there be someone learned in legal matters present to hear the call? *Isn't that the other half of giving the defendant the full measure of his due process protection?*

It would have done Einstein no good to have explained his theory of relativity to me. I would not have understood it. I am not *equipped* to understand it. The same, I feel, applies to a layman justice of the peace in preliminary hearing matters in Wyoming. It is no criticism of the justice of the peace—to the contrary—it is a criticism of the system which places such a heavy burden of responsibility upon untrained people in an area of human relations that demands training and professionalism.

The majority opinion relies heavily upon the rule of Gerstein v. Pugh, 420 U.S. 105, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). The question in that case was one of probable cause under the Fourth Amendment of the United States Constitution which protects against unfounded invasion of liberty and property. *Gerstein* adhered to the Court's former ruling in Beck v. Washington, 369 U.S. 541, 82 S.Ct. 955, 957, 8 L.Ed.2d 98 (1962), where that decision held:

"[*A*]*dversary safeguards* are not essential for the probable cause determination *required by the Fourth Amendment.* The sole issue is whether there is probable cause for detaining the arrested person pending further proceedings. This issue can be determined reliably *without an adversary hearing. . . .*" [Italics mine]

But it is just here that I make the distinction between the *Gerstein* case and the

matter at hand. *Gerstein* is bottomed in the concept that no adversary hearing is required in a Fourth Amendment probable cause question, and *IF THAT WERE TRUE HERE I WOULD AGREE WITH THE MAJORITY OPINION IN ALL OF ITS ASPECTS.* That is not the case here since our Rule 7(b), W.R.Cr.P., provides for an adversary proceeding in preliminary hearings. This fact is recognized in the majority opinion as I read that writing.

The adversary procedure distinction is clearly made in *Gerstein*.

First off, the Court says:

". . . . the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint on liberty following arrest."

The Court goes on:

". . . . adversary safeguards are *not* essential for the probable cause determination required by the Fourth Amendment." [Emphasis mine]

and then comments on the adversary proceeding differences between the Fourth Amendment probable cause problem confronting it and the Coleman v. Alabama preliminary hearing probable cause problem. The Court, in *Gerstein,* observes that the lower courts had held:

". . . . the determination of probable cause must be accompanied by the full panoply of adversary safeguards— counsel, confrontation, cross-examination, and compulsory process for witnesses."

The Court then went on to say:

"A full preliminary hearing of this sort is modeled after the procedure used in many States to determine whether the evidence justifies going to trial under an information or presenting the case to a grand jury. See Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); Y. Kamisar, W. LaFave & J. Israel, Modern Criminal Procedure 957–967, 996–1000 (4th ed. 1974). The standard of proof required of the prosecution is usually referred to as 'probable cause,' but in some jurisdictions it may approach a prima facie case of guilt. A.L.I. Model Code of Pre-arraignment Procedure, Commentary on Article 330, at 90–91 (Tent. Draft No. 5 1972). *When the hearing takes this form, adversary procedures are customarily employed.* The importance of the issue to both the State and the accused justifies the presentation of witnesses and full exploration of their testimony on cross-examination.. *This kind of hearing also requires appointment of counsel for indigent defendants.* Coleman v. Alabama, *supra.* And, as the hearing assumes increased importance and the procedures become more complex, the likelihood that it can be held promptly after arrest diminishes. See A.L.I. Model Code of Pre-arraignment Procedure, *supra,* at 33–34." [Emphasis mine]

Then the Court goes on to say that adversary safeguards are not necessary in Fourth Amendment probable cause matters.

So I would distinguish what Gerstein v. Pugh holds from the problem we are dealing with here on the language of *Gerstein* itself. We are here admittedly and by force of Criminal Rules of Procedure, in an adversary proceeding while *Gerstein* was determining probable cause under the Fourth Amendment in a non-adversary process. None of the technical problems that we have in a probable cause determination under our adversary proceedings were there present.

I would therefore conclude—our Criminal Rules provide for an adversary proceeding at the preliminary hearing level where probable cause is the issue and where the accused is embroiled in a critical stage of the criminal process which will ultimately determine whether he will be bound over to the district court to stand trial for a felony—which could result in his imprisonment.

At the preliminary hearing the indigent must be provided with counsel because his guarantee of fair trial must be implemented and protected—his freedom is at stake—he must be advised whether he should testify or not—he must have advice on the question of whether there is a strong or weak case against him from the point of view of the applicable law. He must be able to recognize, through counsel, whether the State has a fatal weakness in its case—he must have someone by his side to be able to recognize whether the prosecution is erroneous or improper—someone must advise with him about the likelihood of probable cause being found—the consequences thereof—the costs of trial—the amount of bond—whether psychiatric help is indicated—and a myriad of other complicated things which are present and cry out for advice and solution. Since our proceedings are adversary he must have counsel to cross-examine the State's witnesses—object to improper testimony and evidentiary offers and stand by him if he is to be bound over, to protect him against unfair treatment or improvident and uninformed decisions between the preliminary hearing and the trial. These are only a few things that come to mind which call for legal advice.

The ultimate goal is to insure a fair trial for the accused. In a state like Wyoming where the preliminary hearing is a critical stage of the criminal process and is conducted under an adversary proceeding from which the accused will be bound over to the district court for trial, depending upon whether or not the justice of the peace finds there is probable cause to believe he committed the alleged crime, I would hold that it must be presumed that the fair trial guaranties cannot be insured unless the judge who conducts the preliminary hearing and makes the decision at this level is learned in the law. He must be knowledgeable enough in the pertinent legal matters to provide professional leadership, guidance and judgment in all aspects of the prehearing—hearing, and post-hearing affairs coming under his jurisdiction. He must be able to respond and react on the same professional level as the attorneys who prosecute and defend in the language, the intricacies and nuances of trial behavior. The questions arising out of cross-examination—trial tactics—the law applicable to evidentiary matters, procedural questions and ultimately, the decision of whether the accused will be bound over for trial with interim and ultimate jeopardy of freedom in the balance—are all for him to resolve.

I feel that the justice of the peace, before he is asked to perform in this arena, with these high human stakes, should have the advantage of an educational background which would surely, confidently and with full protection to the accused, permit him to discharge his professional duties.

Before I close, I must make myself clear on two tangential points:

First, I know that if my interpretation of the law were to eventually be adopted, it would upset the justice of the peace program in this State. As unhappy an event as this might be, the fact is, however, that this is a problem for the legislature and not for the courts. The accused's constitutional rights are the paramount issue even though an unsettling of the established order of things may be the result.

Secondly, these expressions may not rightfully be interpreted as a criticism of the work that the lay justices of the peace are doing in Wyoming. I am in a position to know at first hand that their work is superlative. That is not, however, the issue raised by the petition.

I would, for the reasons herein stated, have granted the writ.